TRANSAMERICA FINANCIAL RESOURCES, INC., Plaintiff-Appellee, v. WILSON J. RONDINI, JR., Defendant-Appellant.

Second District No. 2—89—0121

Opinion filed October 12, 1989.

Thomas M. Knepper, Therese M. Obringer, and William S. Ettelson, all of Neal, Gerber, Eisenberg & Lurie, of Chicago, for appellant.

David H. Shipman and Robert E. Bouma, both of McDermott, Will & Emery, of Chicago, for appellee.

JUSTICE LINDBERG delivered the opinion of the court:

Defendant, Wilson J. Rondini, Jr., appeals the trial court's order denying his motion to stay proceedings pending arbitration of a collection dispute with his former employer, Transamerica Financial Resources, Inc. (TFR). Defendant contends that the parties' dispute falls within the scope of mandatory arbitration as provided in the rules and constitution of the National Association of Security Dealers (NASD). We affirm.

TFR, a securities brokerage firm and member of NASD, hired defendant as a registered representative to sell securities. At the time defendant was hired, TFR and defendant entered into a written loan agreement, by which TFR loaned defendant $20,576.50. By its terms, the loan agreement provided for a forgiveness of defendant's indebtedness if, as of the due date of each installment payment, defendant continued to be a registered representative of TFR. The agreement further required defendant to execute a collateral security agreement in which he assigned his commissions to TFR "only to the extent nec-

essary to secure repayment of any present or future debit balance in [defendant's] account with [TFR]." The loan agreement itself required defendant to pay TFR three annual principal installments of $6,858.83.

At some point, defendant's employment with TFR terminated. On August 24, 1988, TFR filed a complaint against defendant alleging the terms of the loan agreement, the loan amount, and an outstanding balance of $13,717.67 which it claimed that defendant had failed to pay. TFR sought collection of the outstanding balance, plus reasonable costs, attorney fees, and the maximum legal interest.

Defendant filed a motion to stay the court proceedings, pending arbitration of TFR's claim before the NASD. Defendant alleged that he had signed a document known as "Form U-4," a portion of his application for registration with NASD; he further alleged that the terms of the document comprised a contract between the parties to abide by and otherwise adhere to the NASD rules, including its Code of Arbitration Procedure. The Code requires submission of certain disputes to arbitration as follows:

> "Sec. 8(a) Any dispute, claim or controversy eligible for submission under Part I of this Code between or among members and/or associated persons, and/or certain others, arising in connection with the business of such members(s) or in connection with the activities of such associated person(s), shall be arbitrated under this Code, at the instance of:
>
> (1) a member against another member;
>
> (2) a member against a person associated with a member or a person associated with a member against a member; and,
>
> (3) a person associated with a member against a person associated with a member." NASD Code of Arbitration Procedure, Part II, §8(a), NASD Manual (CCH) par. 3708 (1985).

TFR resisted defendant's motion, arguing that its loan to him did not "arise out of or in connection with" its business as a member of NASD, but rather arose solely out of the parties' employment relationship. Following briefing and oral argument by both sides, the trial court denied defendant's motion for the stay. Defendant's appeal of this order is an interlocutory appeal as of right pursuant to Rule 307(a)(1) (107 Ill. 2d R. 307(a)(1)), as the denial of injunctive relief. See *People v. Kerr-McGee Chemical Corp.* (1986), 142 Ill. App. 3d 1104, 1106, 492 N.E.2d 1003, 1005.

The issue presented by defendant's appeal is whether the trial court erred in determining that TFR's collection claim against its former employee does not arise out of or in connection with its busi-

ness as a member of the NASD and thus is not arbitrable under the provisions of the NASD Code of Arbitration Procedure. Our review of the trial court's order in this matter is limited to a determination of whether the court abused its discretion in denying defendant's motion for a stay. *Kerr-McGee Chemical Corp.*, 142 Ill. App. 3d at 1106, 492 N.E.2d at 1005.

We begin our analysis of defendant's contention with consideration of a recent supreme court decision, *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr* (1988), 124 Ill. 2d 435, 530 N.E.2d 439. Although *Barr* was decided pursuant to the Uniform Arbitration Act (Ill. Rev. Stat. 1987, ch. 10, par. 101 *et seq.*), and the instant matter is governed by the Federal Arbitration Act (9 U.S.C.A. §1 *et seq.* (1970)), the facts presented therein are substantially similar to the instant facts, thus providing persuasive analogous reasoning. Barr worked for Donaldson, Lufkin and Jenrette Futures, Inc. (DFI), for approximately three years. Upon leaving, he filed an arbitration claim before the Chicago Board of Trade (CBOT) against DFI for $500,000, comprising claims for severance pay, unpaid expenses, commission-based bonuses, and recruiting-based bonuses. CBOT Rule 600.00 provided: *"Any controversy *** which arises out of the Exchange business of such parties* [is subject to arbitration]." (Emphasis in original.) (124 Ill. 2d at 439, 530 N.E.2d at 440.) DFI resisted Barr's arbitration claim, contending that the parties' disputes were not arbitrable under Rule 600.00.

■ The supreme court held that the Uniform Arbitration Act required the arbitrator to determine the question of arbitrability in unclear cases; it further held that Barr's claims concerning severance pay and unpaid expenses arose out of his employment contract and were clearly not claims arising out of DFI's Exchange business, while his remaining claims concerning various bonuses were of uncertain origin. Thus, the supreme court determined that Barr's claims concerning severance pay and unpaid expenses were not arbitrable while his remaining claims should be submitted to the arbitrator for determination of the question of arbitrability. (124 Ill. 2d at 450-51, 530 N.E.2d at 446.) We recognize, as did the trial court, that *Barr* is not controlling in the instant matter, as it was interpreting an arbitration rule of the Chicago Board of Trade in light of the Illinois Uniform Arbitration Act; however, the arbitration provision at issue in both cases contains nearly identical language. Further, the State policy favoring arbitration (*Barr*, 124 Ill. 2d at 443, 530 N.E.2d at 443) mirrors the Federal policy favoring this method of dispute resolution (*Shearson/American Express, Inc. v. McMahon* (1987), 482 U.S. 220, 226, 96 L.

Ed. 2d 185, 193, 107 S. Ct. 2332, 2337). Additionally, the parties concede that they are unable to provide, nor has this court located, case law construing the NASD arbitration provision in light of the Federal Arbitration Act as applied to a similar factual situation.

TFR concedes that, as a member of NASD, it is bound by the NASD Code of Arbitration Procedure and is required to arbitrate disputes which arise out of or in connection with its business. It insists, however, and we agree, that its claim against defendant constitutes a simple collection matter arising out of the parties' employment relationship and has no connection with its business as a retail broker of securities. Defendant contends that because TFR has conceded it is bound to arbitrate "[a]ny dispute, claim or controversy arising out of or in connection with [its] business [as an NASD] member," and "because the loan agreements arose in connection" with TFR's business, the parties' dispute must be submitted to arbitration. Defendant offers no support for his crucial conclusion that his loan agreement with TFR arose in connection with TFR's business as an NASD member. The Federal cases upon which he relies are inapposite.

In *Francis v. Marshall* (D. Mass. 1987), 661 F. Supp. 773, plaintiff was both the buyer of a new company and business partner of one of the defendants. The defendants were, among others, plaintiff's business partner and a new company they had jointly formed. Plaintiff and defendant Marshall put their assets into the new jointly created company, and plaintiff was employed as its president. Ultimately, the parties' business relationship soured, and plaintiff's employment was terminated. He sued all defendants in Federal court, alleging, *inter alia*, breach of contract, fraudulent inducement, and violations of various Federal statutes. Defendants moved to compel arbitration under the Federal Arbitration Act and the NASD rules. The Federal district court of Massachusetts considered the issue of whether the parties' dispute fell within the scope of the NASD arbitration provision, *viz*, did the dispute "arise out of or in connection with" the business of an NASD member. The court noted the Federal policy concerning arbitration required that doubts regarding the scope of an arbitration clause must be resolved in favor of arbitration; it further noted that Federal legislation has granted broad authority for self-regulation to organizations in the security industry which "strengthens the presumption that disputes among their members are arbitrable." (See *Francis*, 661 F. Supp. at 775.) The court held that the broad NASD arbitration clause encompassed a dispute concerning the purchase and sale as a corporate entity of an NASD member. (661 F. Supp. at 775.) In passing, the court stated that the arbitration clause was "certainly

broad enough to cover a dispute between an NASD member and an employee, not stemming from the purchase and sale of securities." (661 F. Supp. at 775.) Defendant Rondini relies upon this *dictum* to no avail, as this comment does not constitute the district court's holding; nor is it a necessary finding to support the court's ultimate conclusion.

In another case cited by defendant, a New York Stock Exchange (NYSE) member firm sought relief against former employees who allegedly had converted confidential client information. These former employees in turn moved to compel arbitration of the claims against them under the Federal Arbitration Act and the NYSE constitution, which required arbitration of "[a]ny controversy *** arising out of the business of [NYSE members]" (NYSE Const., art. VIII, §1). The Court of Appeals for the Eighth Circuit held that the NYSE arbitration provision extended to cover a member's suit against former employees for conversion of proprietary information. See *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey* (8th Cir. 1984), 726 F.2d 1286, 1289.

■ Comparing the instant facts to those presented in *Barr, Francis* and *Hovey*, we believe that TFR's loan collection claim against defendant most closely resembles Barr's claims for severance pay and unpaid expenses, claims which our supreme court determined did not arise out of a CBOT member's Exchange business. In *Francis*, the dispute concerned the sale of an NASD member itself, while *Hovey* concerned former employees' alleged conversion of client information. It is easy to discern the security-business nature of the disputes in both these cases. On the other hand, TFR's loan to the instant defendant bears no relationship to its business as a retail broker of securities. The loan clearly arises out of the parties' employment relationship and one that is not unique to the securities business. Both parties agree that the loan with its forgiveness of indebtedness feature is well characterized as a bonus for defendant's agreement to come to work for TFR. Although defendant pledged his commissions as a security against the debt, the amount of the loan is undisputed and, by its own terms, bears no relationship to any expectations TFR may have had of defendant as a registered representative. The collateral security agreement was merely an additional way for TFR to secure payment. Thus, the trial court correctly denied defendant's motion to stay court proceedings pending arbitration of TFR's collection claim against him.

Our holding today is not to be construed as a determination that all employment-related disputes between NASD members and their

registered representatives are not related to the members' business and thus nonarbitrable; we do not believe that employment disputes and disputes concerning an NASD member's business will be mutually exclusive in all cases; however, the instant facts compel such a conclusion.

Accordingly, the order of the circuit court is affirmed.

Affirmed.

McLAREN and INGLIS, JJ., concur.