**Rupert FRANCIS, Plaintiff,**

v.

**Michael P. MARSHALL, Eastern Capital Corporation, Eastern Capital Securities, Inc., Defendants.**

Civ. A. No. 85–3660–T.

United States District Court,
D. Massachusetts.

March 20, 1987.

Alan R. Hoffman, M. Eric Schoenberg, Lynch, Brewer, Hoffman & Sands, Boston, Mass., for plaintiff.

Peter M. Lauriat, Peabody & Brown, Boston, Mass., Keith C. Long, Nutter, McClennen & Fish, Hyannis, Mass., for defendants.

## MEMORANDUM

TAURO, District Judge.

At issue is defendants' motion to compel arbitration of certain 10b–5 and related state and federal claims brought by the plaintiff, who alleges that he was fraudu-

lently misled into purchasing a securities company for which he formerly worked. A rather detailed exposition of the facts is necessary to put the underlying legal issues in perspective.

## I

### THE FACTS

In February 1984, while plaintiff was president of Eastern Capital Securities, Inc. (ECSI), ECSI's owners decided to sell the company, and offered it to plaintiff. In April 1984, plaintiff began negotiations with defendant Marshall, owner of Inter-South Securities Corp. (ISSC). According to plaintiff, he and Marshall agreed upon a multi-faceted plan to effectuate his purchase of ECSI. Plaintiff would purchase ECSI with cash loaned by Marshall. Marshall would set up a holding company, Eastern Capital Credit of Georgia (ECC). Plaintiff would then convey ECSI, and Marshall would convey ISSC, to ECC. In addition, both would contribute cash to ECC. Marshall and plaintiff would then jointly own and operate ECC, Marshall being the majority stockholder. Plaintiff further alleges that Marshall promised plaintiff an employment contract and a $15,000 capital credit in ECC, representing a bonus due plaintiff from ECSI.

In the succeeding months, this plan was partially implemented. Plaintiff purchased ECSI. ECC was created. Plaintiff and Marshall transferred to ECC their respective companies and cash, and they became executives of ECC as allegedly contemplated. By August 1984, however, their business relationship apparently began to sour and, in October 1984, plaintiff was terminated from his position at ECC. Plaintiff further asserts that he never received any ECC stock, and was not given credit for the $15,000 bonus due him from ECSI.

Plaintiff alleges that Marshall fraudulently induced him to purchase the stock of ECSI and convey it to ECC and that Marshall thereafter breached contractual and fiduciary duties he owed to plaintiff. The eleven count Complaint relies on several legal theories: Rule 10b–5, promulgated under the Securities Exchange Act of 1934, § 10(b), 15 U.S.C. § 78j(b) (count 1), the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962 (count 2), Massachusetts common law (counts 3–9), M.G.L. c. 93A (count 10), and the Georgia RICO statute, Ga.Code § 16–14–4 (count 11).

Defendants have moved, under the Federal Arbitration Act, 9 U.S.C. § 4, to compel arbitration of all counts. In the alternative, defendants seek to dismiss counts 2, 10 and 11.

## II

### THE ARBITRATION ISSUE

On May 14, 1984, plaintiff agreed, in writing, "to arbitrate any dispute, claim or controversy ... required to be arbitrated" by the rules, constitution, or bylaws of the National Association of Securities Dealers (NASD).[1] Under NASD rules, "any dispute, claim or controversy *arising out of or in connection with the business of any member* of the Association ... between or among members ... [or] between or among members and ... others ..." is eligible for submission to arbitration. NASD Manual: Code of Arbitration Procedure (CCH) ¶ 3701 (1982) (emphasis added). In addition, NASD rules *require* arbitration of any such dispute "at the instance of ... a member against a person associated with a member ... [and] a person associated with a member against [another] person associated with a member." *Id.* at ¶ 3708.

It is undisputed that defendant ECSI is a member of the NASD, and that defendant Marshall and plaintiff are associated persons. All defendants have moved for arbitration. If, therefore, the instant dispute is

---

**1.** The writing was contained in plaintiff's Form U–4, a uniform registration application in the securities industry, filed with the NASD. All registrants of a securities organization such as the NASD are bound to arbitrate according to its rules. *Coudert v. Paine Webber,* 705 F.2d 78, 81 (2d Cir.1983).

arbitrable, then arbitration is mandatory.[2] The seminal issue, therefore, is whether the parties' dispute is within the scope of the arbitration agreement—that is, whether it "aris[es] out of or in connection with the business of" ECSI.

■ Federal policy strongly favors arbitration. *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). As a result, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Moreover, Congress has delegated broad powers to self-regulatory organizations in the securities industry, including the NASD, to police the conduct of their members, *Austin Mun. Securities v. NASD,* 757 F.2d 676, 679–81 (5th Cir.1985) (reviewing federal statutory scheme), and to resolve disputes among members extrajudicially, *Coenen v. E.W. Pressprich & Co.,* 453 F.2d 1209, 1211–12 (2d Cir.1972) (interpreting New York Stock Exchange arbitration rules). This broad delegation of power to self-regulatory securities organizations strengthens the presumption that disputes among their members are arbitrable. *See Coenen,* 453 F.2d at 1212 (broad construction of arbitration provisions is "entirely consistent with congressional grant of power to Stock Exchanges to govern themselves").

■ On its face, the arbitration clause at issue here is broad in scope. It covers *"any* dispute, claim or controversy *arising out of or in connection with the business* of any [NASD] member." *Cf., e.g., Ayres v. Merrill Lynch,* 538 F.2d 532 (3d Cir.) (clause requiring arbitration of claims "arising out of employment or termination" of registered brokerage house employee held not to encompass employee's fraud claim against employer stemming from sell-back of employer's stock on retirement), *cert. denied,* 429 U.S. 906, 1010

(1976). Plaintiff, however, urges that it be interpreted narrowly. He asserts that "the business" of ECSI is "the operation of a securities brokerage and specifically the purchasing and selling of securities on the over-the-counter markets." Plaintiff's Memorandum in Opposition to Defendants' Motion to Compel at 9–10.

This court disagrees. The arbitration clause does not refer to the "operation" of a securities business. Rather, it covers "any dispute" arising "in connection with" an NASD member's business. For example, the clause is certainly broad enough to cover a dispute between an NASD member and an employee, not stemming from the purchase and sale of securities. *See Merrill Lynch v. Hovey,* 726 F.2d 1286, 1288–89 (8th Cir.1984) (NYSE "arising out of the business" arbitration provision held to cover suit by employer against two ex-employees for conversion of proprietary information).

This court holds that the subject arbitration provision encompasses plaintiff's claims. Plaintiff alleges, in essence, fraud in the purchase and sale of ECSI, a securities business that is an NASD member. A dispute over the purchase and sale of an NASD member is a "controversy arising out of or in connection with the business of" that member. In short, "the business" of a securities firm includes its purchase and sale as a corporate entity.

All arbitrable counts in the Complaint must, therefore, be arbitrated. It is now clear in this circuit that plaintiff's federal 10b–5 claim (count 1) is arbitrable, and his federal RICO claim (count 2) is not. *Page v. Moseley Hallgarten,* 806 F.2d 291 (1st Cir.1986). The Massachusetts common law claims (counts 3–9) and M.G.L. c. 93A claim (count 10) are arbitrable. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). Plaintiff's claim under the Georgia RICO stat-

---

**2.** Plaintiff notes, and defendants admit, that defendant ECC is neither a member nor a person associated with a member, since associated persons must be natural persons, under NASD bylaws. But, plaintiff's dispute is with three defendants. Two of them (ECSI and Marshall)

can require arbitration. One of them (ECC) cannot. "'[A]t the instance of" ECSI and Marshall, however, the entire dispute must be arbitrated, assuming the issue is otherwise eligible for arbitration.

ute, Ga.Code §§ 16–14–1, *et seq.* (count 11), however, must be treated differently than plaintiff's other state law claims. The Georgia statute is patterned closely after its federal counterpart. *Stanton v. Shearson Lehman,* 622 F.Supp. 293 (D.Ga.1985). In particular, Georgia RICO expressly provides a right of action to civil plaintiffs, Ga.Code § 16–14–6(c), and is quasi-criminal insofar as a civil judgment against a defendant is effectively an accusation of participation in a "pattern of racketeering activity." Ga.Code §§ 16–14–3(2), (3); 16–14–4. These are the same concerns that led the First Circuit to hold federal RICO claims non-arbitrable. *Page,* 806 F.2d at 298–300. In light of the significant similarity between federal and Georgia RICO, this court holds that *Page* controls, and plaintiff's Georgia RICO count is non-arbitrable.

An order will issue.

## ORDER

For the reasons set forth in the accompanying memorandum, it is hereby ordered as follows:

1. Defendants' motion to compel arbitration is allowed as to counts 1, 3, 4, 5, 6, 7, 8, 9 and 10 of plaintiff's Complaint, and denied as to counts 2 and 11 of the Complaint;

2. Defendants' alternative motion to dismiss counts 2, 10 and 11 is denied without prejudice;

3. Proceedings in this case shall be stayed pending the arbitration of the counts herein ordered to be arbitrated.

It is so ordered.