No. 65,845

BLAINE SKEWES, *Appellee,* v. SHEARSON LEHMAN BROTHERS, *Appellant.*

(829 P.2d 874)

Opinion filed April 10, 1992.

*Daniel M. Dibble,* of Lathrop & Norquist, of Kansas City, Missouri, argued the cause, and *W. Joseph Hatley,* of the same firm, of Overland Park, was with him on the briefs for appellant.

*Jim Lawing,* of Wichita, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

SIX, J.: This is an arbitration case arising from the effect of the Code of Arbitration of the National Association of Securities Dealers, Inc., (NASD) on a tort claim of retaliatory discharge asserted by a stockbroker against his employer.

The two controlling issues are: (1) whether the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.* (1988), preempts K.S.A. 5-401, which prohibits the arbitration of tort claims; and (2) whether plaintiff Blaine Skewes' retaliatory discharge claim arose out of or in connection with his employer's "business" and, consequently, is subject to arbitration under the Uniform Application for Securities Industry Registration form (Form U-4).

Shearson Lehman Brothers, formerly known as Shearson Lehman Hutton, Inc., (Shearson) appealed the trial court's order denying its motion to stay proceedings and compel arbitration of Skewes' retaliatory discharge claim. In an unpublished opinion filed June 28, 1991, the Court of Appeals reversed and remanded for an order staying the judicial proceeding and compelling arbitration.

We granted Skewes' petition for review.

We affirm the Court of Appeals, reverse the trial court, and hold that the FAA preempts the Kansas Uniform Arbitration Act. We also hold that under the facts of this case, Skewes' retaliatory discharge claim arose out of or in connection with his employer's "business" and is within the scope of the arbitration provision contained in the Form U-4.

### Facts

Skewes was working for Shearson as a stockbroker. Shearson, terminated his employment. Skewes filed suit against Shearson, alleging that Shearson: (1) breached the employment contract; (2) wrongfully refused to allow his pension rights to vest and to pay him under the pension plan; and (3) discharged him in retaliation for filing a wage claim with the Kansas Department of Human Resources.

Shortly after Skewes began his employment, Skewes and Shearson (by its agent, the Wichita office manager) executed a "Form U-4." The Form U-4 contained the following provisions:

"I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to

be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register, as indicated in Question 8."

In Question 8, Skewes indicated that he was to be registered with the NASD.

Section 8(a) of the NASD Code of Arbitration Procedures (NASD Code) states in part:

"Any dispute, claim or controversy eligible for submission under Part I of this Code between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), shall be arbitrated under this Code, at the instance of:
(1) a member against another member; [and]
(2) a member against a person associated with a member or person associated with a member against a member . . . ."

Section 1, Part I of the NASD Code provides:

"This Code of Arbitration Procedure is prescribed and adopted pursuant to Article VII, Section 1(a)(3) of the By-Laws of the National Association of Securities Dealers, Inc. (The 'Association') for the arbitration of any dispute, claim or controversy arising out of or in connection with the business of any member of the Association, with the exception of disputes involving the insurance business of any member which is also an insurance company:
(1) between or among members; [and]
(2) between or among members and public customers, or others."

Shearson filed a motion to stay proceedings and to compel arbitration. In support of its motion, Shearson contended that Skewes' claims arose out of his employment as a Shearson stockbroker and that he had agreed to arbitrate such claims under the rules of the New York Stock Exchange (NYSE) and NASD. Shearson asserted that the FAA requires that the action be stayed and Skewes be compelled to arbitrate his claims. Shearson acknowledged that K.S.A. 5-401 excludes from arbitration contracts between employer and employees and tort claims; however, Shearson asserted that the FAA preempts the Kansas statute.

Skewes conceded that his pension benefits and breach of employment contract claims were subject to arbitration under the Form U-4 and that his employment involved interstate commerce.

Skewes contended that his retaliatory discharge claim was not subject to arbitration because K.S.A. 5-401 prohibits arbitration of tort claims. He asserts we have ruled that federal law does not preempt the Kansas arbitration statute.

## Rulings of the Trial Court

The trial court granted Shearson's motion to stay and compel arbitration as to all of Skewes' claims except the retaliatory discharge claim. The trial court reasoned: (1) The claim of retaliatory discharge did not arise out of or in connection with Shearson's business of selling securities and is not required to be arbitrated under the NASD Code, and (2) federal law does not preclude a retaliatory discharge state court action because the agreement between Shearson and Skewes is not intrinsically related to the tort. The trial court relied on *Coleman v. Safeway Stores, Inc.*, 242 Kan. 804, 752 P.2d 645 (1988).

## The Court of Appeals Opinion

The Kansas Court of Appeals reversed and remanded. It held first that the FAA preempted Kansas law restricting arbitration of tort claims and then reasoned that the retaliatory discharge claim was within the scope of the arbitration agreement, finding that the claim arose out of or in connection with Shearson's business.

## FAA Preemption—K.S.A. 5-401—The Arbitration of Tort Claims

K.S.A. 5-401 provides:

"(a) A written agreement to submit any existing controversy to arbitration is valid, enforceable and irrevocable except upon such grounds as exist at law or in equity for the revocation of any contract.

"(b) Except as provided in subsection (c), a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable except upon such grounds as exist at law or in equity for the revocation of any contract.

"(c) The provisions of subsection (b) shall not apply to: (1) Contracts of insurance; (2) contracts between an employer and employees, or their respective representatives; or (3) any provision of a contract providing for arbitration of a claim in tort."

K.S.A. 5-401 invalidates arbitration clauses contained in employment contracts and clauses providing for arbitration of tort claims.

Shearson argues that the FAA preempts Kansas law and mandates that Skewes' retaliatory discharge action be stayed and the claim submitted to arbitration. Thus, Shearson contends the trial court erred in relying on *Coleman*. We agree.

The FAA provides:

"A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exists at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1988).

9 U.S.C. § 1 (1988) defines "commerce," in part, as "commerce among the several States." Section 1 also contains the following exceptions: "[B]ut nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." Skewes argues that the arbitration clause in question is contained in a contract of employment involving interstate commerce, and, therefore, exempt from the FAA.

In *Gilmer v. Interstate/Johnson Lane,* 500 U.S. ____, 114 L. Ed. 2d 26, 111 S. Ct. 1647 (1991), the Supreme Court considered the argument that 9 U.S.C. § 1 excludes all employment contracts from the FAA in the context of an arbitration agreement contained in a Form U-4.

In affirming the Fourth Circuit, Justice White, speaking for a seven-member majority, stated the issue: "The question presented in this case is whether a claim under the Age Discrimination in Employment Act of 1967 . . . can be subjected to compulsory arbitration pursuant to an arbitration agreement in a securities registration application." 500 U.S. at ____, 114 L. Ed. 2d at 35.

As required by his employment, Gilmer executed a Form U-4 with a clause requiring arbitration of "any dispute, claim or controversy" between him and his employer that is required to be arbitrated under the rules of the organizations with which he registered. 500 U.S. at ____, 114 L. Ed. 2d at 35. Gilmer registered with the NYSE. The Court noted that the § 1 employment contract exclusion argument was not raised below or presented in the petition for *certiorari.* The Court stated that it would be inappropriate to address the scope of the § 1 exclusion because the arbitration clause was not contained in a contract of employ-

ment. "Rather, the arbitration clause at issue is in Gilmer's securities registration application, which is a contract with the securities exchanges, not with [his employer]." 500 U.S. at ___ n.2, 114 L. Ed. 2d at 36 n.2.

In the case at bar, Skewes did not raise the contract of employment argument below. In fact, he assumed a contrary position when he conceded his claims other than retaliatory discharge were required to be arbitrated. *Gilmer* holds that the § 1 exemption of the FAA is not applicable to arbitration clauses in the Form U-4, which contains the arbitration agreement at issue.

Section 3 of the FAA requires that an action brought in any "courts of the United States" upon any issue referrable to arbitration under a written arbitration agreement be stayed until such arbitration has been had. 9 U.S.C. § 3 (1988). Section 4 authorizes a party aggrieved by the failure of another to arbitrate under a written agreement to petition any "United States district court" having jurisdiction for an order compelling arbitration. 9 U.S.C. § 4 (1988).

Acknowledging the references to "courts of the United States" and "United States district court" in §§ 3 and 4 of the FAA, the United States Supreme Court has held that § 2 of the FAA applies in state courts and preempts state law requiring a judicial forum. *Perry v. Thomas,* 482 U.S. 483, 96 L. Ed. 2d 426, 107 S. Ct. 2520 (1987); *Southland Corp. v. Keating,* 465 U.S. 1, 79 L. Ed. 2d 1, 104 S. Ct. 852 (1984).

The Court in *Southland Corp.* relied on *Moses H. Cone Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983), stating, "[We reaffirm] our view that the Arbitration Act 'creates a body of federal substantive law' and expressly stated what was implicit in *Prima Paint [v. Flood of Conklin,* 388 U.S. 395, 18 L. Ed. 2d 1270, 87 S. Ct. 1801 (1967)], *i.e.,* the substantive law of the Act created was applicable in state and federal courts." *Southland Corp.,* 465 U.S. at 12. The Court then reasoned: "In creating a substantive rule applicable in state as well as federal courts, Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements." 465 U.S. at 16.

The enforceability of the FAA is subject to two limitations only: (1) The arbitration act must be contained in a written maritime

contract or a contract evidencing a transaction involving commerce as defined in § 1; and (2) the clause may be invalidated "upon such grounds as exist at law or in equity for the revocation of any contract" (9 U.S.C. § 2). The state may not impose additional limitations. 465 U.S. at 10-11.

*Southland Corp.* was applied in *Perry v. Thomas,* which involved facts similar to those in the case at bar. Thomas brought an action alleging breach of contract, conversion, civil conspiracy to commit conversion, and breach of fiduciary duty against his former employer, Kidder, Peabody and Co., and two of its employees, Perry and Johnston. The action arose from a dispute over the commissions on the sale of securities. After Thomas refused to submit the dispute to arbitration, the defendants sought to stay further judicial proceedings and to compel arbitration. The demands for arbitration were based on the arbitration provision found in the Form U-4 that Thomas had signed. The *Thomas* Form U-4 is identical to the Form U-4 signed by Skewes. However, Thomas had registered with the NYSE. Rule 347 of the NYSE was involved in *Thomas* rather than the NASD Code. Rule 347 provided in part: " '[A]ny controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party' . . . ." 482 U.S. at 485.

The trial court in *Thomas* denied the defendants' petition to compel arbitration, holding that § 229 of the California Labor Code authorized Thomas to pursue an action to collect wages without regard to private arbitration agreements. 482 U.S. at 486. The California Court of Appeals affirmed, and the California Supreme Court denied Thomas' petition for review. 482 U.S. at 488-89. Relying on *Southland Corp.,* the United States Supreme Court reversed and held that § 2 of the FAA preempts § 229 of the California Labor Code.

The trial court's reliance, in the case at bar, on *Coleman v. Safeway Stores, Inc.,* 242 Kan. 804, was misplaced. *Coleman* addressed whether the federal Labor Management Relations Act (LMRA) preempted state tort claims. We also referred in *Coleman*

to the inappropriateness of arbitrating tort claims. 242 Kan. at 813-15.

*Coleman* is distinguishable from the instant case. The FAA was not involved in *Coleman.* The United States Supreme Court has limited preemption by the LMRA where the state tort law purports to define the meaning of the contract relationship. 242 Kan. at 811-12 (citing *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 211, 85 L. Ed. 2d 206, 105 S. Ct. 1904 [1985]). The United States Supreme Court has not limited the preemption by the FAA. As to our reference in *Coleman* that arbitral procedures are comparatively inappropriate for the resolution of tort claims, we note that *Thomas* and *Southland Corp.* involved tort claims (fraud, breach of fiduciary duty) and that arbitration was required.

Tort claims such as defamation, negligence, fraud, invasion of privacy, and breach of fiduciary duty also have been held arbitrable under the FAA. See *Zolezzi v. Dean Witter Reynolds, Inc.,* 789 F.2d 1447 (9th Cir. 1986) (defamation, invasion of privacy); *Morgan v. Smith Barney, Harris Upham & Co.,* 729 F.2d 1163 (8th Cir. 1984) (slander); *Block 175 Corp. v. Fairmont Hotel Management Co.,* 648 F. Supp. 450 (D. Colo. 1986) (breach of fiduciary duty, intentional or reckless breach of duty); *Merrill Lynch, Pierce, Fenner & Smith v. Thomson,* 574 F. Supp. 1472 (E.D. Mo. 1983) (breach of no-compete clause in employment contract); *Merrill Lynch, Pierce, Fenner v. McCollum,* 666 S.W.2d 604 (Tex. App. 1984) (tortious interference with contract), *cert. denied* 469 U.S. 1127 (1985).

In *R. J. Palmer Constr. Co. v. Wichita Band Instrument Co.,* 7 Kan. App. 2d 363, 365, 642 P.2d 127 (1982), decided before *Southland Corp.* or *Thomas,* the Kansas Court of Appeals observed that the FAA applies in state courts as well as federal courts. The FAA requires state courts to enforce an arbitration clause despite contrary state policy.

*Southland Corp.* and *Thomas* teach that the FAA preempts conflicting state law which exempts enforcement of arbitration agreements involving interstate commerce. Under the facts of the case at bar, K.S.A. 1990 Supp. 5-401, which prohibits the arbitration of tort claims, is preempted by the FAA.

### Retaliatory Discharge—The Scope of The
### Arbitration Provision Contained in the Form U-4

Resolution of the retaliatory discharge/arbitration issue requires interpretation of the arbitration clause contained in the Form U-4 and the NASD code referred to in the Form U-4. The Form U-4 has been adopted by the Kansas Securities Commissioner. K.A.R. 81-2-1(1).

"The construction of a written instrument is a question of law, and the instrument may be construed and its legal effect determined by an appellate court." *Kennedy & Mitchell, Inc. v. Anadarko Prod. Co.*, 243 Kan. 130, 133, 754 P.2d 803 (1988).

In the Form U-4, Skewes agreed to arbitrate "any dispute, claim or controversy that may arise *between me and my firm* . . . that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register, as indicated in Question 8." (Emphasis added.) Skewes indicated in Question 8 that he was to be registered with the NASD. Therefore, we must determine whether the rules, constitutions, or by-laws of the NASD require Skewes' retaliatory discharge claim to be arbitrated.

Section 1 of the NASD Code provides for the arbitration of any "dispute, claim or *controversy arising out of or in connection with the business of any member* . . . (1) between or among members; [and] (2) *between or among members* and public customers, or *others.*" (Emphasis added.) Section 8 requires arbitration of disputes defined in section 1 *"between or among members and/or associated persons* . . . arising in connection with the business of such member(s) or in connection with the activities of such associated person(s) . . . at the instance of: (1) a member against another member; [and] (2) *a member against a person associated with a member* or a person associated with a member against a member." (Emphasis added.)

The trial court held that Skewes' claim for retaliatory discharge did not arise out of or in connection with Shearson's business, which is selling securities. Therefore, the claim was not within the scope of the arbitration agreement.

Shearson argues that Skewes' retaliatory discharge claim arises out of or in connection with Shearson's business. Shearson disagrees with the trial court's narrow interpretation. Shearson as-

serts its business is not limited to buying and selling securities but, as with any other employer, includes dealings with employees. We agree.

Skewes contends that the Form U-4 and the NASD Code are ambiguous. He reasons that any person signing the Form U-4 would understand that only disputes involving securities are required to be arbitrated. Skewes further contends that *Gilmer* suggests that compulsory arbitration should only be permitted in labor disputes where the arbitration clause explicitly applies to disputes arising from the employer/employee relationship. Skewes emphasizes that the NASD rules do not include any provision comparable to Rule 347 of the NYSE, which was dispositive of the *Gilmer* arbitration issue.

In *Moses H. Cone Hospital v. Mercury Constr. Corp.*, 460 U.S. at 24-25, the Supreme Court stated: "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."

Skewes is correct in asserting that *Gilmer* involved NYSE Rule 347, which is more specific than §§ 1 and 8 of the NASD Code. Rule 347 specifically refers to disputes "arising out of the employment or termination of employment" of a registered representative. However, *Gilmer* does not suggest that a less specific arbitration clause is invalid.

Skewes' argument supporting a narrow interpretation of the NASD Code has been unsuccessfully advanced recently by similarly situated plaintiffs.

In *Singer v. Jefferies & Co., Inc.*, 78 N.Y.2d 76, 571 N.Y.S.2d 680 (1991), New York's highest court, speaking through Chief Judge Wachtler, endorsed a broad interpretation of the NASD Code. Singer, the plaintiff, had worked for the defendant, Jefferies & Co. (the firm). The firm was a member of the NASD. A Form U-4 was involved. The arbitration language interpreted was the same as that before us in the case at bar. Singer, as a senior vice-president and manager of the firm's corporate finance department, at the direction of Jefferies, the CEO, signed a $3 million invoice sent to Ivan F. Boesky for "investment, advisory

and corporate finance services." Boesky pled guilty to illegal stock market activities. The $3 million bill was actually intended to cover an investment loss. Jefferies was charged criminally with aiding and abetting and pled guilty. Singer, who had left the firm, was never charged; however, he did receive a summons from the Securities and Exchange Commission which was investigating Boesky's financial dealings with the firm. Singer sued the firm, alleging that he had been ordered to prepare the fraudulent invoice without knowledge of the true facts. He also asserted that he was made to appear to be a party to the crime and that this caused him to suffer damage to his finances and professional reputation.

The firm claimed that the dispute was subject to arbitration. The trial court agreed; the appellate division did not. Singer contended that the dispute was not arbitrable because it arose out of illegal activity and not out of the lawful business of the firm. The appellate division accepted Singer's interpretation, noting that "the business of Jefferies & Company, and of the individual defendant, was stocks, not fraud." 78 N.Y.2d at 82. Upon review, the Court of Appeals rejected the narrow interpretation, noting, "Under prevailing Federal law the wrongful conduct must involve 'significant aspects' of the employment or the employer's business activities [citations omitted]." 78 N.Y.2d at 83.

The *Singer* court, in holding that Singer's claim for injury to reputation resulting from the firm's use of him as an unwitting pawn in a securities fraud was subject to arbitration, stated: "To hold that such a dispute does not arise out of the firm's business is unrealistic and inconsistent with the Federal policy requiring liberal, indeed generous, interpretation of arbitration agreements [citation omitted]." 78 N.Y.2d at 84.

The *Singer* court, in analyzing the NASD Code, noted:

"Congress adopted the [FAA] to insure that the courts would rigorously enforce private agreements to arbitrate (*Dean Witter Reynolds v. Byrd,* 470 U.S. 213, 219, 221) and it establishes an 'emphatic' national policy favoring arbitration which is binding on all courts, State and Federal [citations omitted]. Pursuant to the Arbitration Act, 'questions of arbitrability must be addressed with a healthy regard for the federal policy * * * [and] any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration' [citations omitted]." 78 N.Y.2d at 81-82.

In *Madden v. Ellspermann*, 813 S.W.2d 51 (Mo. App. 1991), the NASD Code received a broad characterization. Madden, the stockbroker plaintiff, sued his former brokerage firm employer, Kidder, Peabody & Co., Inc., and its office manager, Ellspermann, for breach of contract, wrongful termination, and misappropriation of commissions. Madden had been terminated because he failed to notify Kidder, Peabody that he was purchasing an interest in a savings and loan. Again, the NASD Code language we are required to interpret in the case at bar was involved. Madden advanced the narrow interpretation asserted by Skewes. Madden argued that the NASD Code does not cover disputes arising out of private affairs. Madden contended that his purchase of an interest in the savings and loan was personal business not connected with Kidder, Peabody; therefore, the reason for his termination was unconnected with the business of Kidder, Peabody. The Missouri Court of Appeals stated:

"This argument overlooks the fact that the employment of Madden by Kidder, Peabody to conduct its business is a matter arising out of and in the course of business of Kidder, Peabody. In like manner the termination of Madden's employment is a matter arising out of and in connection with the business of Kidder, Peabody. The reason given for the termination, even if related to a non-business subject, is unimportant. The essential ingredient is the termination of employment which is a matter arising out of the business of Kidder, Peabody." 813 S.W.2d at 54.

*Francis v. Marshall*, 661 F. Supp. 773 (D. Mass. 1987), interpreted the scope of §§ 1 and 8 of the NASD Code. The court in *Francis* was urged to interpret the "business of any [NASD] member" narrowly to involve only the purchasing and selling of securities on the over-the-counter markets. The court disagreed, noting that § 1 is broad on its face.

"The arbitration clause does not refer to the 'operation' of a securities business. Rather, it covers 'any dispute' arising 'in connection with' an NASD member's business. For example, the clause is certainly broad enough to cover a dispute between an NASD member and an employee, not stemming from the purchase and sale of securities." 661 F. Supp. at 775.

The *Francis* court held that "the business" of an NASD member securities firm includes the firm's purchase and sale as a corporate entity.

*Nelsen v. Colleary,* 152 Misc. 2d 81, 574 N.Y.S.2d 912 (1991), involved a plaintiff stockbroker suing her employer, Chase Securities Inc. The Form U-4, the NASD Code, termination of plaintiff's employment, and a claim of "harassment and humiliation denigrating [plaintiff's] sex and religion" in violation of the New York State Human Rights Law were also involved. The *Nelsen* court emphasized the public policy favoring arbitration in holding that plaintiff's claims were within the intent of the Form U-4 and the NASD arbitration agreement.

Between the dates of our acceptance for review and oral argument, Skewes requested that *Higgins v. Superior Court,* 234 Cal. App. 3d 1464, 1 Cal. Rptr. 2d 57 (1991), be added to his petition for review. Counsel for Shearson was granted leave to respond to *Higgins.* Skewes followed Shearson's response with a supplemental brief addressing *Higgins.*

The California Supreme Court denied a petition for review and ordered *Higgins* decertified for publication. *Higgins v. Superior Court,* B057028 (Cal. S. Ct. January 8, 1992). Therefore, we will not consider *Higgins* in resolving the case at bar.

*A.G. Edwards & Sons, Inc. v. Clark,* 558 So. 2d 358 (Ala. 1990), construed §§ 1 and 8 of the NASD Code. Clark, a stockbroker, filed a defamation action against another stockbroker, Thompson, and A.G. Edwards, Thompson's employer, alleging Thompson made defamatory remarks about Clark which were repeated in an A.G. Edwards advertisement. When Clark associated with his employer (Clark was never employed by A.G. Edwards), he had signed a Form U-4 and listed NASD as the organization he would be registered with.

Thompson admitted that he and Clark had never had any business dealings. There had never been any dispute between the two men about any securities transaction or any investment banking transaction. Thompson and A.G. Edwards moved the trial court for an order compelling arbitration. The trial court denied the motion. Both defendants appealed.

The Alabama Supreme Court affirmed, holding that Clark's claim did not arise out of the business of A.G. Edwards. The *Clark* court focused on the title to Part II, where § 8 is found, labeled "Industry and Clearing Controversies," and determined § 8 was intended to apply only to disputes relating to the se-

curities business. The "business" of the members is the trading of securities. The defamatory remarks had some relation to Clark's business as a stockbroker but did not arise out of or in connection with any business between Clark and A.G. Edwards or Thompson. The Alabama Supreme Court emphasized the nonemployment factual scenario of *Clark* by stating:

"This is not a case like those cited by the defendants wherein the plaintiff was either an employee or a former employee of the defendant or was involved in business transactions with the defendant. Perhaps if these remarks had occurred in the context of business dealings involving the defendants and Clark, the matter might have to be arbitrated under the language of the NASD Code, but that scenario is not the case before us. It is undisputed that Clark and the defendants had had no business dealings with each other." 558 So. 2d at 364.

A significant factual distinction exists between *Clark* and the instant action. The facts in *Clark* do not provide the "scenario" that is before us in the case at bar. The tort of defamation in *Clark* occurred in the absence of any business dealings between Clark and Thompson or A.G. Edwards. Skewes was an employee of Shearson; Clark was neither an employee of A.G. Edwards, nor had he had any business dealings with A.G. Edwards or Thompson.

Skewes' termination of employment occurred in the context of business dealings. Skewes alleges in his petition he was given 90 days to raise his projected annual volume. Shearson answered by admitting Skewes was advised to increase his production for the months of July, August, and September and that his failure to improve his production could result in termination. Skewes contends he was terminated not because of low sales production but rather in retaliation for filing a wage claim.

Shearson's business is selling securities. Skewes was employed by Shearson to sell securities. Thus, Shearson's employment of Skewes arose out of or in connection with Shearson's business. Likewise, Shearson's termination of Skewes' employment also arose out of or in connection with Shearson's business. Skewes' claim of retaliatory discharge alleges he was terminated for reasons unrelated to the sale of securities; however, we acknowledge the signal from *Moses H. Cone Hospital,* 460 U.S. 1, to resolve any doubts in favor of arbitration. We hold that Skewes' claim for

retaliatory discharge arose out of or in connection with Shearson's business. Thus, the claim fell within the arbitration agreement. Skewes' retaliatory discharge action must be stayed and the claim submitted to arbitration.

We reverse the trial court and affirm the Court of Appeals. This case is remanded to the trial court for an order staying the judicial proceeding and compelling arbitration.

LOCKETT, J., dissenting: In our system, determining the rights of the parties is based on a maxim, a doctrine, a precedent, a statute, or public policy. In order of importance, the legislature's declaration of public policy is primary. It is the duty of the court, whenever possible, to uphold the public policy of the state.

The Kansas Legislature stated the public policy as to arbitration when it enacted the Kansas Uniform Arbitration Act, K.S.A. 5-401 et seq. The Act provides that a written agreement to submit any existing controversy to arbitration is valid, enforceable, and irrevocable except upon such grounds as exist at law or in equity for the revocation of any contract. K.S.A. 5-401(a). The Act then specifically states it does not apply to (1) contracts of insurance; (2) contracts between an employer and employees, or their respective representatives; or (3) any provision of a contract providing for arbitration of a claim in tort. K.S.A. 5-401(c). By enacting K.S.A. 5-401(c), our legislature clearly stated the public policy of this state is that parties cannot contract to arbitrate a claim in tort. The majority fails to uphold the legislature's statement of public policy.

The majority correctly states that Skewes, when he began his employment with Shearson, executed a Form U-4, which required him to arbitrate any dispute, claim, or controversy that may arise between him and his firm, a customer, or any other person that is required to be arbitrated under the rules, constitutions, or bylaws of the organization with which he registered. Skewes was registered with the National Association of Securities Dealers, Inc. (NASD).

Section 1, Part I of the NASD Code requires arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of NASD, with the exception of disputes involving the insurance business of any member which

is also an insurance company: (1) between or among members; and (2) between or among members and public customers, or others.

Section 8(a) of the NASD Code states in part:

"Any dispute, claim or controversy eligible for submission under Part I of this Code between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), shall be arbitrated under this Code : . . ."

By contrast, Rule 347 of the New York Stock·Exchange provides in part: "Any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party." Unlike the NASD Code, the rules of the New York Stock Exchange clearly require arbitration of controversies arising out of employment or termination of employment. NASD does not require that the parties arbitrate termination of employment.

In *A.G. Edwards & Sons, Inc. v. Clark*, 558 So. 2d 358 (Ala. 1990), Clark, a stockbroker, sued Thompson, another·stockbroker, and A.G. Edwards & Sons, Inc., Thompson's employer, alleging defamation based upon comments made by Thompson and then repeated by A.G. Edwards in a newspaper advertisement. As a stockbroker, Clark had signed an agreement to arbitrate any dispute between him and another broker or firm. The defendants moved the trial court for a stay and for an order compelling Clark to submit to arbitration; the trial court denied the motion. Thompson had never had any business transactions with Clark or any dispute about any securities transaction or any investment banking transaction. Both defendants sought review.

The Alabama Supreme Court noted two general principles governing the determination of arbitrability: First, the duty to ·arbitrate is a contractual obligation; only those disputes which a party has agreed to submit to arbitration must be so resolved. Arbitrability is thus a matter of contract interpretation. It must be ascertained whether the parties intended the particular dispute to be arbitrated as evidenced by the language contained in the agreement. Second, when contract language is ambiguous ·or un-

clear, a "healthy regard" for the federal policy favoring arbitration requires that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." 558 So. 2d at 361. The court noted the NASD Code does not define "business," but it does define "[i]nvestment banking or securities business" as "the business, carried on by a broker or dealer, of underwriting or distributing issues of securities, or of purchasing securities and offering the same for sale as a dealer therein, or of purchasing and selling securities upon the order and for the account of others." "Member" is defined as "either any broker or dealer admitted to membership in the [National Securities Clearing] Corporation or any officer or partner of such a member." 558 So. 2d at 363.

The Alabama court stated that although the arbitration clauses in the NASD Code talk of "business," it is clear that all the persons that must abide by the arbitration clauses are defined in terms of participants in the "securities business." By its very nature, the "business" of the members of NASD is the trading of securities and, while arbitration clauses are to be interpreted broadly, they are not limitless and cannot be interpreted to include matters that clearly fall outside the scope of the contract or agreement. The court determined that despite the facts the allegedly defamatory remarks had some connection with Clark's business as a stockbroker and the remarks had an adverse effect on Clark's business, it remained that this alleged defamation did not arise in connection with any business between Clark and the defendants. 558 So. 2d at 363-64.

The majority chose not to follow the rationale of the Alabama Supreme Court that NASD does not require torts to be arbitrated. By doing so, the majority departs from the stated public policy of our legislature and adopts the rationale of cases contrary to that public policy.

Arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute the party has not agreed to submit. See *City of Beverly v. White, Hamele & Hunsley*, 224 Kan. 386, 580 P.2d 1321 (1978). The district court correctly determined that under the NASD Code, Skewes contracted only to arbitrate disputes with his employers or others that arise out of the sale of stock, and not tort claims.

I would affirm the district court.

ALLEGRUCCI, J., joins the foregoing dissenting opinion.