(7 P.3d 1282)
Modified Opinion

No. 82,368

WILLIAM C. ALEXANDER, *Appellee/Cross-appellant*, v. MICHAEL A. EVERHART, JANETTE W. EVERHART, and EVERHART HOMES, INC., *Appellants/Cross-appellees*.

Modification of opinion filed April 7, 2000. Modified opinion filed August 10, 2000.

*Michael Childs* and *Jerry W. Brumfield,* of Brown & James, P.C., of Kansas City, Missouri, for the appellants/cross-appellees.

*S. W. Longan III* and *Patricia L. Lear-Johnson,* of Longan & Associates, of Leawood, for the appellee.

Before KNUDSON, P.J., PIERRON, J., and VAN HAMPTON, District Judge, assigned.

PIERRON, J.: Michael A. Everhart, Janette W. Everhart, and Everhart Homes, Inc., (collectively referred to as Everhart) appeal the trial court's failure to grant their motion to confirm the arbitration award previously entered in the case. Everhart argues the court erred in vacating the arbitration award by finding the home construction contract between Everhart and William C. Alexander was either repudiated or breached by Everhart and therefore the contractual agreement to arbitrate was inoperative. On cross-appeal, Alexander argues the trial court erred in finding Everhart did not fraudulently induce him to enter the construction contract and by not limiting the scope of the claims submitted to the arbitrator.

On April 1, 1993, Alexander entered into a contract with Everhart for the construction of a new house. After construction began, a conflict arose when the cost of the house began to exceed the amount originally set forth in the contract. Alexander questioned certain invoices and requested further proof of the amount claimed on each draw. Eventually Alexander stopped paying and Everhart left the construction site, although the house was pretty much complete by that time.

On March 31, 1995, Alexander filed a petition against Everhart alleging breach of contract, negligence, fraud, breach of warranty, and violations under the Kansas Consumer Protection Act. Everhart invoked the arbitration clause in the construction contract and sought an order to stay those proceedings and compel arbitration of all claims. In an attempt to avoid arbitration, Alexander alleged

that Everhart fraudulently induced him to enter both the construction contract and the arbitration provision therein.

On April 21, 1997, the trial court denied Alexander's claim, finding no fraudulent inducement. Pursuant to the contract, the court ordered that all remaining disputes and claims be submitted to arbitration. Alexander did not voluntarily submit to arbitration, but rather was ordered to arbitration by the court.

After 7 days of hearing evidence, the arbitrator ruled against Alexander on all claims. However, the arbitrator found that Alexander was entitled to a credit of $10,000 for the breach of contract claim concerning the earnest money deposit. The arbitrator awarded Everhart $28,072.55 for unpaid draws and $43,421.40 for attorney and witness fees. Subtracting the $10,000 credit, the arbitrator awarded Everhart $61,493.95.

On April 20, 1998, Everhart filed a motion to confirm the arbitration award with the trial court. On May 7, 1998, Alexander filed with the trial court an application to correct and/or modify the arbitration award. He also wrote a letter to the arbitrator asking for corrections and modifications. Alexander also stated that by filing the motion, he did not waive his right to vacate the award or correct further errors. The arbitrator denied the request.

On June 8, 1998, Alexander filed a motion to vacate the arbitration award. Alexander argued Everhart obtained the arbitration award through corruption, fraud, or other undue means because Everhart failed to disclose they had exercised their option under paragraph 25 of the contract to void the contract and take the $10,000 earnest money deposit as liquidated damages.

The trial court sided with Alexander and vacated the arbitrator's award. The court found that Everhart either impliedly declared the contract inoperative and claimed the $10,000 earnest money deposit as liquidated damages, or Everhart withdrew the $10,000 in breach of the parties' agreement. In either case, the court ruled it was a material breach of contract and that a repudiated or breached contract cannot be utilized to force arbitration. Consequently, the court overruled its previous order of arbitration since the parties were ordered to arbitration without an appropriate agreement to do so.

Everhart appeals the court's decision to vacate the arbitration award pursuant to K.S.A. 5-418(a)(3). They contend the court erroneously found they breached or repudiated the contract and voided the arbitration provision.

Besides the statutorily listed exceptions, the Kansas Uniform Arbitration Act provides that a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable, and irrevocable except upon such grounds as exist at law or in equity for the revocation of any contract. K.S.A. 1999 Supp. 5-401(b); *Friday v. Trinity Universal of Kansas*, 262 Kan. 347, 349, 939 P.2d 869 (1997). The arbitration provision in the present case is found at paragraph 27 of the construction contract:

"CERTIFIED MASTER BUILDER PROGRAM: This Agreement and the home to be constructed and sold hereunder are covered by the Certified Master Builder Program ("the Program") of Certified Master Builder Corporation. Builder represents that the [*sic*] is currently a member of that Program. Without limiting the generality of the foregoing, Builder and Buyer specifically acknowledge that the Optional Conciliation and Arbitration Procedure of the Program apply to this transaction. Those Optional Conciliation and Arbitration Procedures are described in the Limited Warranty. Among other things, those Procedures are elective by the Buyer, but if the Procedures are elected by the Buyer with respect to a dispute then BOTH CONCILIATION AND, IF THAT IS UNSUCCESSFUL, BINDING ARBITRATION UNDER THE PROCEDURES ARE MANDATORY FOR BOTH THE BUILDER AND THE BUYER. In the event that the Buyer does not elect to proceed under the Certified Master Builder Program procedures, it is hereby expressly agreed that such dispute shall be submitted for binding arbitration within five (5) days of written notification by either party to the other party of a demand for arbitration, which demand sets forth the nature of the dispute. Both parties shall select a builder, contractor or architect, as their expert. Those two individuals shall select a third expert to serve and act as the arbitrator. A binding decision shall be rendered by the arbitrator within a reasonable time following submission of the case. Each party agrees to deposit $300.00 into escrow to be held by the arbitrators for the payment of the arbitrators' and experts' fees. As part of the decision, the arbitrator shall designate which party is to pay for the fees and shall set forth the amount, if any, to be distributed from or paid into escrow. All three experts agree to be governed by the terms of this Agreement, including adherence to the time frame for selecting the arbitrator and rendering a decision as required by this Section."

The district court's scope of review in examining an arbitration award is quite limited. An award is presumed valid unless one of

the specific grounds in K.S.A. 5-412(a) is proven. "Nothing in the award relating to the merits of the controversy, even though incorrectly decided, is grounds for setting aside the award in the absence of fraud, misconduct, or other valid objections." *Jackson Trak Group, Inc. v. Mid States Port Authority*, 242 Kan. 683, 689, 751 P.2d 122 (1988). The court may not consider evidence presented to the arbitrators, and an award will not be revised unless it is "tainted or based on an irrational interpretation of the contract." *Jackson Trak Group, Inc.*, 242 Kan. at 689.

However, the interpretation and legal effect of written instruments are matters of law, and an appellate court exercises unlimited review. Regardless of the construction given a written contract by the trial court, an appellate court may construe a written contract and determine its legal effect. *City of Topeka v. Watertower Place Rev. Group*, 265 Kan. 148, 152-53, 959 P.2d 894 (1998). Consequently, the interpretation of a contract to determine whether there is a valid arbitration agreement is a question of law over which this court has unlimited review.

Paragraph 3 of the contract states:

"As part of the Purchase Price, BUYER agrees to pay BUILDER, upon the execution of this Agreement, the sum of $25,000.00 as an earnest money deposit. Such earnest money deposit shall be paid to BUILDER and may be used for the acquisition of the real estate by the BUILDER (if applicable) and/or construction of the residence. The earned money deposit shall be credited as follows: The first $15,000.00 will be credited/used for items on the first draw after construction begins, and the remaining $10,000.00 will be credited against the Final Payment only."

Paragraph 25 states:

"LIQUIDATED DAMAGES: Builder and Buyer agree that if there is a default by Buyer of Buyer's obligations under this Agreement, it would be extraordinarily difficult or impossible to accurately determine the amount of damages suffered by Builder as a result of Buyer's default. If Builder has kept his part of this Agreement and Buyer fails to comply as provided herein within five (5) days thereafter, then this Agreement may or may not be operative at the option of Builder and if declared inoperative by Builder, all money deposited and already paid to Builder shall be paid to and retained by Builder as liquidated damages and not as a penalty. Time is of the essence of this Agreement. . . . Should either party be entitled to received payment from the other, and should such payment not be paid within two (2) days of the due date therefor, then such payment shall

bear simple interest at the rate of 2% above the highest prime rate published in the Wall Street Journal, beginning with the 6th day following the date payment becomes due, and ending when the amount due has been paid. Builder may stop construction, without notice to Buyer, if payment is not received within five (5) days of the due date and will resume when payment is received along with interest and the time for completion shall be extended for the delay."

The trial court found Mike Everhart's testimony during the arbitration evidenced Everhart's intent to either declare the contract inoperative and claim the money as liquidated damages or to withdraw the money in breach of the contract pursuant to paragraphs 3 and 27. In either instance, the court found Everhart committed a material breach of the contract. The court also found there was no evidence in the record to suggest that Alexander was aware the $10,000 had been withdrawn by Everhart since Everhart gave no notice of the action. Consequently, the court found there was not an appropriate agreement to arbitrate.

Everhart first argues the trial court erred by not finding that Alexander waived his claim that Everhart had breached or repudiated the contract or ratified the arbitrator's ruling when Alexander sought modification of the arbitration award.

Everhart contends Alexander had no authority to file a motion to modify or correct with both the arbitrator and the trial court. K.S.A. 5-409 provides that a litigant can file an application with the arbitrator to change an award but if a motion to confirm, vacate, or modify the award is pending in the trial court, then the proper recourse is a motion filed with the trial court. Everhart relies on *U.S.D. No. 215 v. L.R. Foy Constr. Co.*, 237 Kan. 1, 697 P.2d 456 (1985), where the court discussed Foy's motion to vacate an award based on the argument that arbitrators exceeded their authority by filing an award outside of the 30-day period following the close of the hearing. However, prior to filing the motion to vacate, Foy had filed an application to the arbitrators for clarification of the award pursuant to K.S.A. 5-409. The court held:

"The application to the arbitrators for clarification, made pursuant to K.S.A. 5-409, was acknowledgment of the validity of the award. Foy was invoking the jurisdiction of the arbitration panel for the purpose of securing 'clarification'— having the award clarified as Foy sought to have it read. By so moving, he acknowledged the jurisdiction of the panel and the efficacy of the award. We need

not determine whether the thirty-day period fixed in the American Arbitration Association rules is directory or mandatory. From the record before us it is clear that Foy waived any right it may have had to object to the award on the ground that the arbitrators lost jurisdiction after the expiration of the thirty days by first moving to have the award clarified. Foy's second motion is wholly inconsistent with and antagonistic to the first." 237 Kan. at 4.

Everhart argues pursuant to *Foy*, Alexander could not file a motion to correct or modify with the arbitrator and then later file a motion to vacate the award on the grounds that the arbitrator had no jurisdiction in the first place. Everhart also contends Alexander has known since execution of the contract in 1993 that Everhart had the earnest money deposit, that Alexander has wrongfully refused to pay, and that Alexander refused to pay based on Everhart's alleged breaches of contract and misrepresentations. Not until the arbitration was decided against him, did Alexander raise the argument that retention of the deposit voided the contract.

Here, Alexander admits the timetable of facts set forth by Everhart but contends the court correctly found that he did not waive his objections to the arbitration award. *Foy* is distinguishable from the present case. Foy never raised an objection to arbitration prior to filing the motion for clarification of the award and then the later motion to vacate. It was Foy who sought to resolve the matter through arbitration and sought, and was granted, an order from the court compelling arbitration.

It can hardly be said that Alexander agreed to arbitration. Alexander has fought arbitration from the beginning of the case. He filed a motion concerning Everhart's alleged fraudulent activity in contracting, including the arbitration provision, to prevent an order of arbitration and then filed a motion for the trial court to reconsider arbitration. The trial court specifically found Alexander did not submit to arbitration voluntarily and he was ordered to arbitration by the court. In his motion to modify filed with the trial court, he stated in the opening paragraph that he knew he had 20 days to file a motion for correction/modification under K.S.A. 5-409 and 90 days to file a motion to vacate under K.S.A. 5-413. Alexander stated, "Plaintiff does not waive his rights under K.S.A. 5-413 by filing this motion [to correct and/or modify]." Conse-

quently, we do not find Alexander waived his right to request the court to vacate the arbitration award.

Everhart next argues the trial court erred in finding the withdrawal of the $10,000 was a material breach and, therefore the contract was unenforceable. Everhart points out that the arbitrator gave Alexander the credit pursuant to the contract, even though Alexander has not made a final payment. He argues there is no material breach since Alexander received substantially what he bargained for—a new house. Everhart argues even if there was a breach it only went to the consideration of the contract which was incidental and subordinate to the main purpose of the contract and does not warrant rescission. See *In re Estate of Johnson*, 202 Kan. 684, Syl. ¶ 3, 452 P.2d 286 (1969).

Alternatively, Everhart argues that if they breached the contract, the arbitration agreement was still valid because the breach did not so repudiate the provision to arbitrate and excuse Alexander from the obligation to arbitrate. See *Drake Bakeries v. Bakery Wokers*, 370 U.S. 254, 262, 8 L. Ed. 2d 474, 82 S. Ct. 1346 (1962) ("Arbitration provisions, which themselves have not been repudiated, are meant to survive breaches of contract, in many contexts, even total breach."). Everhart argues the result would allow a party to avoid arbitration with any breach of contract, thus defeating the inherent purpose of arbitration.

The court in *In re Estate of Johnson*, 202 Kan. 684, Syl. ¶ 3, stated that to warrant rescission of a contract because of a breach of its terms, the breach must be material and the failure to perform so substantial as to defeat the object of the parties in making the agreement. Alexander argues Everhart's failure to credit the $10,000 to the amount billed and claimed in arbitration is a material breach of the contract.

A contract for arbitration, as any other contract, may be breached, but not every breach excuses the other party from the promise to arbitrate any more than any breach of a construction contract excuses further performance by the other party. 6A Corbin on Contracts § 1443, pp. 442-46 (1962); *Drake Bakeries,,* 370 U.S. at 262. An asserted breach does not deprive a party of its right to arbitrate unless it includes a repudiation of the arbitration pro-

vision itself or other conduct that substantially defeats the purpose of the agreement to arbitrate. 6A Corbin on Contracts § 1443, p. 443 (1962); see *Jefferson County School Dist. v. Shorey*, 826 P.2d 830, 849 (Colo. 1992).

A repudiation results when conduct of a party is so inconsistent with the end of the arbitration clause as to indicate that the right has been abandoned. *Brennan v. Kenwick*, 97 Ill. App. 3d 1040, 1042, 425 N.E.2d 439 (1981). Inconsistency is found from conduct which prevents arbitration, or makes that recourse impossible, or which proceeds "at all times in disregard of the arbitration clause." *EFC Develop. Corp. v. F.F. Baugh Plumbing & H. Inc.*, 24 Ariz. App. 566, 569, 540 P.2d 185 (1975).

Everhart argues he did not repudiate the contract, and the trial court's finding regarding the same is not supported by substantial competent evidence. The issue of whether there is a valid arbitration agreement is a question of law over which the trial court retains jurisdiction. K.S.A. 1999 Supp. 5-401 gives the trial court the authority to determine the validity of an arbitration agreement. K.S.A. 5-412(a)(5) gives the trial court the authority to vacate an arbitration award where "[t]here was no arbitration agreement and the issue was not adversely determined in proceedings under K.S.A. 5-402 and the party did not participate in the arbitration hearing without raising the objection." The surfacing of evidence which voids the order of arbitration and the arbitration agreement is properly brought before the trial court.

Even if we assume the withdrawal or retention of the $10,000 was not justified, this does not repudiate the arbitration provisions, either expressly or impliedly. Everhart obviously did not want to repudiate the arbitration provision. The retention or withdrawal of the $10,000 did not defeat the purpose of the arbitration agreement. The arbitrator could, and did, make sure Alexander received proper credit for the $10,000. The arguably premature taking of it by Everhart was easily remedied. There was no need to abrogate the arbitration provision. That portion of the trial court's decision is reversed, and the matter is remanded for further proceedings consistent with this opinion.

On cross-appeal, Alexander argues the trial court erred by not finding he was fraudulently induced to enter the construction contract and the arbitration clause, and the parties should not have been ordered to arbitration.

The court's journal entry denying Alexander's fraudulent inducement claims provides a list of 10 alleged representations made by Everhart in support of his claims. Alexander spends the majority of his cross-appeal setting forth the evidence to support each one of these claims. Everhart sets forth testimony and evidence to counter each of the claims.

The district court found Everhart's evidence and interpretations more persuasive. From a review of the record, the district court was acting within its sound discretion in its weighing of the evidence.

However, we find merit in Alexander's cross-appeal on the issues of the allegations of fraud committed during arbitration and the scope of the claims submitted for arbitration.

Alexander argues the district court erred in failing to make additional findings concerning fraud, corruption, and other undue means discovered during the arbitration. Alexander states it was not until the arbitration proceedings that Everhart disclosed that they had exercised their liquidated damage remedy. He contends Everhart cannot void the contract, take liquidated damages, and at the same time maintain the validity of the contract to collect additional damages.

To establish fraud in Kansas, there must be more than a mere preponderance of evidence, there must be clear and convincing evidence. Fraud is not presumed. *Foley Co. v. Grindsted Products, Inc.*, 233 Kan. 339, 346, 662 P.2d 1254 (1983).

We remand to the district court for determination of whether a fraud was committed on the arbitrator. K.S.A. 5-412(a)(1) allows the district court to vacate an arbitration award where the award was procured by corruption, fraud, or other undue means. See *Professional Builders, Inc. v. Sedan Floral, Inc.*, 16 Kan. App. 2d 180, 182-84, 819 P.2d 1254 (1991). This question was not considered by the district court since it resolved the case by vacating the arbitration award based on Everhart's alleged breach of the arbi-

tration agreement in taking the $10,000 earnest money deposit as liquidated damages.

If the district court concludes there was no fraud, then the arbitration award remains partially intact. Alexander argues the scope of the arbitration should have been limited only to those claims properly submitted to the arbitrator. We agree and hold the scope of the arbitration should have been limited to those issues contained in the arbitration agreement or those issues agreed for arbitration by the parties.

Initially, the issue is not whether the arbitrator's award should be vacated for exceeding his powers under K.S.A. 5-412(a)(3). Clearly, the arbitrator exercised power under an order from the district court instructing him to decide all disputes between the parties. The court's journal entry stated: "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all disputes remaining between the parties be submitted forthwith to arbitration per the contract or as the parties may otherwise agree." The district court interpreted the arbitration clause and defined the scope of the claims by giving the arbitrator the authority to decide all claims.

Generally, courts seek to uphold arbitration agreements even where the contract provisions are somewhat uncertain and indefinite. Arbitration agreements are construed by the usual rules and canons of contract interpretation. Regardless of the construction of a written instrument made by the district court, on appeal the instrument may be construed and its legal effect determined by the appellate court. *City of Lenexa v. C.L. Fairley Constr. Co.*, 245 Kan. 316, 319, 777 P.2d 851 (1989).

The arbitration provision in the building contract was in paragraph 27 entitled "Certified Master Builder Program":

"Without limiting the generality of the foregoing, Builder and Buyer specifically acknowledge that the Optional Conciliation and Arbitration Procedures of the Program apply to this transaction. Those Optional Conciliation and Arbitration Procedures are described in the Limited Warranty. Among other things, those Procedures are elective by the Buyer, but if the Procedures are elected by the Buyer with respect to a dispute then BOTH CONCILIATION AND, IF THAT IS UNSUCCESSFUL, BINDING ARBITRATION UNDER THE PROCEDURES ARE MANDATORY FOR BOTH THE BUILDER AND THE BUYER. In the event that the Buyer does not elect to proceed under the Certified

Master Builder Program procedures, it is hereby expressly agreed that such dispute shall be submitted for binding arbitration within five (5) days of written notification by either party to the other party of a demand for arbitration, which demand sets forth the nature of the dispute."

Alexander argues the Certified Master Builder (CMB) program conciliation and arbitration procedures only covered disputes over warranty issues, and not contract disputes, payment issues, KCPA claims, or tort claims. Further, Alexander maintains the contract does not require the parties to submit all disputes to arbitration. Alexander states that he did not elect to use the CMB program and he did not agree to submit his claims against Everhart to arbitration. Since he did not choose to proceed under the CMB program, Alexander argues Everhart demanded arbitration in his letter of January 26, 1994, and the only claim was a demand for payment.

Everhart responds that there is not any language in the contract relieving Alexander of the obligation to arbitrate the dispute. Everhart contends Alexander wrote a letter to Everhart where he chose not to elect the CMB program procedures while simultaneously admitting Everhart's right to pursue arbitration. Everhart cites Alexander's testimony that Alexander was not opposed to binding arbitration *when he signed the contract.*

Everhart argues it is "wholly unfair" for Alexander to admit and consent to a mutually beneficial arbitration clause and now claim it was void due to ambiguity. Everhart also argues Alexander has no authority for the statement that the arbitrator had no authority to hear KCPA claims, tort claims for negligence and fraud, breach of warranty claims, and the awarding of attorney fees. He cites case law concerning the Federal Arbitration Act (FAA) and how it preempts any of the applicable state arbitration statutes. The federal legislation is intended to foreclose state legislatures from undercutting the enforceability of arbitration agreements. *Skewes v. Shearson Lehman Bros.,* 250 Kan. 574, 580-81, 829 P.2d 874 (1992). Everhart cites language in *Skewes* where claims for defamation, negligence, fraud, invasion of privacy, and breach of fiduciary duty are arbitrable under the FAA.

In response, Alexander argues the testimony demonstrated that the CMB program would only arbitrate claims pertaining to war-

ranty work. Alexander states there is nothing in the CMB program conciliation and arbitration procedure that requires parties to submit all issues to arbitration. He also contends the contract language controls the parameters of arbitration and it is irrelevant whether the FAA applies. Alexander argues the proper interpretation of the contract requires a finding that the district court was incorrect in sending all issues to arbitration.

In the event the district court rules there was no fraud committed during the arbitration, the arbitration award stands only as to the unpaid draw and fee claims made by Everhart. It is undisputed that Alexander fought arbitration from the beginning of this case. The language of the building contract limits claims for arbitration to warranty claims or those raised by the parties in the demand for arbitration, which would have been Everhart's request for payment in the arbitration demand letter. Alexander's KCPA, breach of contract, and breach of warranty claims remain viable for potential trial. Any award received by Alexander for said claims could be offset against the amount Everhart received in the arbitration award.

Reversed and remanded for further proceedings consistent with this opinion.