Peter P. NGHIEM, Plaintiff–Appellant,

v.

NEC ELECTRONIC, INC., a California corporation; NEC Corporation; Japan (Nippon Electric Company), a Japanese corporation; Hiro Hashimoto; H. Yoshizawa, Dr.; Grant Hulse, Defendants–Appellees.

No. 92–16155.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted as to Defendants–Appellees Nov. 4, 1993.

Submitted as to Plaintiff–Appellant Nov. 4, 1993.

Decided June 3, 1994.

David H. Tollner, San Jose, CA, for plaintiff-appellant.

David J. Murphy and Keith R. Black, Littler, Mendelson, Fastiff & Tichy, San Jose, CA, for defendants-appellees.

Before KOZINSKI and O'SCANNLAIN, Circuit Judges; HATFIELD,* District Judge.

Opinion by Judge O'SCANNLAIN.

O'SCANNLAIN, Circuit Judge:

In this challenge to an arbitrator's award, we are asked to decide, among other issues, whether the so-called *"American Safety* doctrine" continues to prevent submission of antitrust claims to arbitration.

I

Peter Nghiem, an American citizen of Vietnamese heritage, was employed by NEC Electronics, Inc. in California from August 31, 1989 until he was fired in June 1990. Nghiem brought suit against NEC Electronics, Inc., NEC Corporation (Tokyo) Japan, and co-employees (collectively "NEC") alleging, inter alia, wrongful termination, race discrimination, and an antitrust violation. Nghiem claims that NEC had represented that it would provide a long-term management position to Nghiem if he accepted its employment offer.

On August 31, 1989, Nghiem signed an employment contract which did not contain an arbitration clause. Paragraph 11 of the contract states, in part: "No terms or provisions of this Agreement shall be varied or modified by any prior or subsequent act of either me or the Company except that the Company and I may subsequently amend this agreement by written instruments that specifically refer to this agreement and that are executed in the same manner as this agreement." Nghiem claims that he did not sign a modified version of NEC's employment contract because it contained a clause for binding arbitration.

On September 5, 1989 and May 7, 1990, Nghiem signed acknowledgments for receipt of NEC's company handbook. The handbook explained that NEC had a four-step "Problem Resolution Process" for employee complaints. Nghiem claims that he felt compelled to use this process because the language of the handbook said that this was the only process for resolving employee complaints. Step Four of the process is "final and binding arbitration." Nghiem followed the four-step process, including initiating arbitration pursuant to Step Four.

Through the spring of 1991, Nghiem presented evidence and argument in the arbitration hearings, including a fifty-page closing brief. On November 18, 1991, the arbitrator rendered a decision in favor of NEC. On November 27, 1991, Nghiem wrote the American Arbitration Association ("AAA") to request a trial de novo and to confirm that the arbitration was not binding on him.

Meanwhile, on June 10, 1991, Nghiem had filed suit in state court on substantially the same issues. NEC removed to federal district court on March 6, 1992. On June 9, 1992, 1992 WL 613555 the district court granted NEC's motion for confirmation of the arbitration award and dismissed Nghiem's suit in its entirety, including the statutory claims of employment discrimination and an antitrust violation.

II

■ Nghiem contends that he is not bound by the arbitrator's decision because the Federal Arbitration Act ("FAA" or "the Act"), 9 U.S.C. §§ 1–14, requires that an agreement to arbitrate be in writing. 9 U.S.C. § 2. Nghiem points out that the contract he signed does not have an arbitration clause and that he did not sign a proposed subsequent contract which did. Although Nghiem claims that NEC told him he had to pursue arbitration, that is inconsistent with his claim that he consciously avoided signing any agreement which would require him to pursue arbitration. The district court found that Nghiem voluntarily initiated binding arbitration and this finding is not clearly erroneous.

■ Nghiem further claims that he intended the arbitration to be nonbinding against him, but binding against NEC; his position is not persuasive. While the FAA "requires a writing, it does not require that the writing be signed by the parties." *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 846 (2d Cir.1987). In addition to the employee handbook, which provides for binding arbitration and which Nghiem acknowledges

---

* The Honorable Paul G. Hatfield, Chief Judge for the District of Montana, sitting by designation.

receiving, on September 21, 1990, Nghiem wrote a letter to NEC's Human Resource Director, Denny Mitchell, requesting to proceed with Step Four of NEC's problem resolution process—final and binding arbitration. This constitutes a writing memorializing an agreement to arbitrate.

■ Furthermore, even if these writings are insufficient, "[a]n agreement to arbitrate an issue need not be express; ... it may be implied from the conduct of the parties." *Fortune, Alsweet & Eldridge, Inc. v. Daniel,* 724 F.2d 1355, 1356 (9th Cir.1983); *see also Teamsters Local Union No. 764 v. J.H. Merritt and Co.,* 770 F.2d 40, 42 (3d Cir.1985) (citing *Daniel*). In *Daniel,* this court reasoned that Daniel's conduct manifested an intent to arbitrate his dispute with his union because he sent a representative to the arbitration who listened to the union's evidence, presented limited evidence himself, and requested a second continuance. Two weeks later, Daniel's representative sent a letter to the arbitration board, claiming Daniel had no obligation to arbitrate and refusing to attend future hearings. The arbitrator issued a decision adverse to Daniel who appealed, arguing that the arbitrator had no such authority.

This court confirmed the arbitration award, holding that "[w]e have long recognized a rule that a party may not submit a claim to arbitration and then challenge the authority of the arbitrator to act after receiving an unfavorable result." *Daniel,* 724 F.2d at 1357. The court held that even though Daniel attempted to deny the arbitrator's authority before a decision was issued, "[i]t would be unreasonable and unjust to allow Daniel to challenge the legitimacy of the arbitration process, in which he had voluntarily participated over a period of several months, shortly before the arbitrator announced her decision." *Id.*

■ Similarly in this case, Nghiem initiated the arbitration, attended the hearings with representation, presented evidence, and submitted a closing brief of fifty pages. Although he filed suit in state court before the arbitrator announced his final decision, that decision is still binding on Nghiem under *Daniel.* Once a claimant submits to the authority of the arbitrator and pursues arbitration, he cannot suddenly change his mind and

assert lack of authority. Nghiem is bound by the arbitrator's decision.

■ Furthermore, Nghiem's voluntary initiation of arbitration can be interpreted as waiver of any objection he may have had over the authority of the arbitrator. The Fifth Circuit has reasoned that "[o]n whatever basis it rests, waiver, estoppel or new contract, the result is that the grievance submitted to the arbiter defines his authority without regard to whether the parties had a prior legal obligation to submit the dispute." *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union, Local No. 1,* 611 F.2d 580, 584 (5th Cir.1980). This court in *Daniel* concluded that the appellant's "conduct demonstrated he agreed to submit this conflict to arbitration and waived any right to object." *Daniel,* 724 F.2d at 1357.

Finally, the Supreme Court has held that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of *waiver,* delay, or a like defense to arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353–54, 87 L.Ed.2d 444 (1985) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)) (emphasis added). Therefore, we hold that Nghiem has waived any objection to the arbitrator's authority to decide his claims.

NEC argues, as it did before the district court, that if the federal courts do not confirm the arbitration award pursuant to the FAA, the courts should, in the alternative, dismiss Nghiem's action or grant summary judgment based on res judicata or collateral estoppel, or both. Like the district court, we do not reach these arguments because we conclude that Nghiem clearly submitted his claim to binding arbitration.

### III

Even if the arbitration is valid, Nghiem nevertheless claims that his employment discrimination complaint cannot be settled through such process and must be adjudicat-

ed in federal court. Although the earlier Supreme Court cases precluded Title VII cases from being subjected to compulsory arbitration, *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the Court has recently opened the door to arbitration of these claims. *Gilmer v. Interstate/Johnson Lane, Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Before *Gilmer*, this court read *Alexander* as holding "that an employee's statutory right to trial de novo under Title VII is not foreclosed by prior submission of her claim to final arbitration under a collective-bargaining agreement." *Perugini v. Safeway Stores, Inc.*, 935 F.2d 1083, 1086 (9th Cir.1991). Although "the Supreme Court [did] not overrule *Alexander* in *Gilmer*, it [did] reject a reading of *Alexander* as prohibiting the arbitration of employment discrimination claims." *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 308 (6th Cir.1991).

■ The test of whether a statutory claim may be subject to arbitration is congressional intent. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 227, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987). Nghiem does not argue that Congress intended to exclude Title VII claims from arbitration. In any event, subsequent to *Gilmer*, this court has specifically upheld an employer's ability to arbitrate a Title VII claim. *Mago v. Shearson Lehman Hutton, Inc.*, 956 F.2d 932, 935 (9th Cir.1992) (plaintiff did not meet "her burden of showing that Congress, in enacting Title VII, intended to preclude arbitration of claims under the Act").

■ Nghiem rather argues that *Gilmer* does not apply because the 1991 amendments to Title VII provide for jury trial. We conclude, however, that establishing a right to jury trial for Title VII claims does not evince a congressional intent to preclude arbitration; it merely defines those procedures which are available to plaintiffs who pursue the federal option, as opposed to arbitration. Title VII claims are clearly subject to arbitration and Nghiem's argument, therefore, fails.

### IV

Nghiem further contends that his antitrust claims should be heard in federal court because antitrust claims are not subject to arbitration. Nghiem relies on *American Safety Equipment Corp. v. J.P. Maguire & Co.*, 391 F.2d 821 (2d Cir.1968). In *American Safety*, the Second Circuit held that antitrust claims cannot be arbitrated because of the public interest in enforcing antitrust laws, the potential bias and limited expertise of arbitrators, the complexity of antitrust law, and the procedural differences between trials and arbitrations. *Id.* at 826–27. Until now, this circuit has followed the holding and reasoning of *American Safety*. *Lake Communications, Inc. v. ICC Corp.*, 738 F.2d 1473, 1479 (9th Cir.1984).

In light of more recent Supreme Court decisions, however, we must review whether it is appropriate to continue to follow *American Safety*. " 'We are bound by decisions of prior panels' unless an en banc decision, Supreme Court decision or subsequent legislation undermines those decisions." *United States v. Washington*, 872 F.2d 874, 880 (9th Cir.1989) (quoting *Montana v. Johnson*, 738 F.2d 1074, 1077 (9th Cir.1984)). In *Mitsubishi Motors Corporation v. Soler Chrysler–Plymouth Inc.*, 473 U.S. 614, 632–35, 105 S.Ct. 3346, 3356–58, 87 L.Ed.2d 444 (1985), however, the Supreme Court has indeed undermined the reasoning behind *American Safety*. In *Mitsubishi*, the Court held that an antitrust claim could be submitted to an international arbitral tribunal.

Although *Mitsubishi* found "it unnecessary to assess the legitimacy of the *American Safety* doctrine as applied to agreements to arbitrate arising from domestic transactions," *Mitsubishi*, 473 U.S. at 629, 105 S.Ct. at 3355, we are persuaded that the decision is not restricted to the international context. Several reasons support this conclusion. First, the Supreme Court has subsequently cited *Mitsubishi* for the general proposition that antitrust claims can be arbitrated. *Gilmer*, 500 U.S. at 26–27, 111 S.Ct. at 1652.

■ Second, in *Mitsubishi* the Supreme Court specifically refuted the analysis of *American Safety*, confessing its "skepticism of certain aspects of the *American Safety* doctrine." *Mitsubishi*, 473 U.S. at 632, 105 S.Ct. at 3356. Initially, the Court reasoned

that "[t]he mere appearance of an antitrust dispute does not alone warrant invalidation of the selected forum on the undemonstrated assumption that the arbitration clause is tainted." *Id.* With respect to complexity, the Court explained that "[t]he anticipated subject matter of the dispute may be taken into account when the arbitrators are appointed, and arbitral rules typically provide for the participation of experts either employed by the parties or appointed by the tribunal." *Id.* at 633, 105 S.Ct. at 3357. The Court concluded that "the factor of potential complexity alone does not persuade us that an arbitral tribunal could not properly handle an antitrust matter." *Id.* at 633–34, 105 S.Ct. at 3357. Regarding arbiter bias, the Court took note that international arbitrators are frequently drawn from the legal and business communities, and "decline[d] to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious, and impartial arbitrators." *Id.* at 634, 105 S.Ct. at 3358. Finally, the Court addressed "the core of the *American Safety* doctrine," that the private cause of action is fundamental to enforcing antitrust laws, by concluding that "[t]he importance of the private damages remedy ... does not compel the conclusion that it may not be sought outside an American court." *Id.* at 635, 105 S.Ct. at 3358. Given the Court's meticulous step-by-step disembowelment of the *American Safety* doctrine, this circuit will no longer follow *American Safety.* We hold that *Mitsubishi* effectively overruled *American Safety* and its progeny, including *Lake Communications.*

Third, *Mitsubishi* may be seen as evidence of the Supreme Court's desire to make statutory rights subject to arbitration. In holding that claims brought under section 10(b) of the Exchange Act of 1934, 15 U.S.C. § 78j(b), and RICO, 18 U.S.C. § 1961, can be subject to arbitration, the Supreme Court noted that the "federal policy favoring arbitration" established by the FAA "is not diminished when a party bound by an agreement raises a claim founded on statutory rights." *Shearson/American Express v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987). One scholar summed up the situation concisely:

The reasoning used by the Court in *McMahon* to support its holding regarding the arbitrability of 1934 Act and RICO claims, however, suggests that domestic antitrust disputes are likewise subject to arbitration. . . . The *McMahon* Court made no distinction between the international and domestic arbitral forums, but rather stated that domestic and international arbitrators are equally able to handle complex statutory schemes involving treble damage remedies. Such reasoning, in combination with the FAA *can only mean* the judicially implied *antitrust exemption to the FAA no longer exists.*

G. Richard Shell, "Res Judicata and Collateral Estoppel Effects of Commercial Arbitration," 35 UCLA L.Rev. 623, 624 n. 7 (1988) (citations omitted) (emphasis added). Because arbitrators are not precluded from entertaining antitrust claims, Nghiem's argument fails.

## V

Finally, Nghiem argues that the arbitrator's decision was arbitrary and capricious. Not only was this argument not made in the district court, but Nghiem raises it for the first time in his reply brief. Nghiem now alleges witness perjury, procurement of arbitration award by undue means, arbitrator's manifest disregard of the law, and misconduct.

We dismiss these arguments as untimely raised. An appellate court will dismiss arguments not raised at the district court unless there are exceptional circumstances. *FSLIC v. Butler,* 904 F.2d 505, 509 (9th Cir.1990). Nghiem does not even attempt to show exceptional circumstances.

## VI

We conclude that the arbitrator had authority over the claim because Nghiem voluntarily submitted to binding arbitration and is, therefore, bound by the arbitrator's decision. The arbitrator was not precluded from deciding the Title VII and antitrust claims.

**AFFIRMED.**