**Larry BAER, Plaintiff,**

v.

**THE TERMINIX INTERNATIONAL COMPANY, LIMITED PARTNERSHIP, Defendant.**

**No. 96–4146–SAC.**

United States District Court,
D. Kansas.

July 25, 1997.

---

Gary E. Laughlin, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, KS, for Plaintiff.

Thomas J. Lasater, Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, KS, for Defendant.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

The case comes before the court on the defendant's motion to confirm the arbitration award and for summary judgment (Dk. 10). The case arises from a dispute that began when the plaintiff continued to find termite activity after the defendant had retreated his home several times. The plaintiff asked the defendant to pay for the damages done to his home, and the defendant offered to make limited repairs. Unable to agree on the defendant's liability for additional damages and repairs, the parties submitted their dispute to arbitration pursuant to the terms of the Termite Service Plan. The arbitrator conducted a hearing and received the parties' evidence and arguments. In June of 1996, the arbitrator entered an award limiting the defendant's liability to "re-treatment" and to monetary damages of $700 for the unfinished repairs which the defendant had subsequently agreed to make in the early summer of 1995. The defendant seeks summary judgment against the plaintiff's claims and asks for an order confirming the arbitration award as requested in its counterclaim.

## SUMMARY JUDGMENT STANDARDS

A court grants a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. The court is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will ... preclude summary judgment." *Id.* There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The movant first must "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir.), *cert. denied,* 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). The nonmovant then must "come forward with specific facts showing that there is a genuine issue for trial as to elements essential to" the nonmovant's claim or position. *Martin v. Nannie and Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993) (citations omitted). The nonmovant's burden is more than a simple showing of "some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356; it requires " 'present[ing] sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor.' " *Thomas v. International Business Machines,* 48 F.3d 478, 484 (10th Cir.1995) (quoting *Bacchus Industries, Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991)). The court views the evidence of record and draws all reasonable inferences in the light most favorable to the nonmovant. *Id.* A party relying on only conclusory allegations cannot defeat a properly supported motion for summary judgment. *White v. York Intern. Corp.,* 45 F.3d 357, 363 (10th Cir. 1995).

More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Ca-*

*trett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

## STATEMENT OF UNCONTROVERTED FACTS

1. The plaintiff, Larry Baer ("Baer"), purchased on April 22, 1992, a Termite Service Plan from Terminix International Company ("Terminix") for his home at 4101 N.E. Tantara in Topeka, Kansas.

2. Terminix is a Delaware limited partnership headquartered in Memphis, Tennessee. It does business in all 48 states of the continental United States.

3. The Termite Service Plan Order Form, the Termite Service Plan Guarantee No. SR926000066–7 and the Inspections Graphs attached to both contain the terms of the parties' written agreement. The terms include disclaimers and limitations of liability.

4. Baer initially purchased the Termite Service Plan for one year running from April of 1992 through April of 1993. Baer's home was first treated for termites on May 6, 1992. Baer later extended the Plan for additional years by timely paying the annual service fee.

5. The chemicals that Terminix used to treat Baer's home were manufactured in Missouri, transported to Terminix's warehouse. in Tennessee, and subsequently shipped to the Terminix branch office in Topeka.

6. Baer continued to find live termites after the original treatment. From July 16, 1992, through April 24, 1996, Terminix has retreated Baer's home many times based on the discovery of additional termite activity. Terminix retreated Baer's home when requested or necessary.

7. After several re-treatments, Baer demanded that Terminix pay for the termite damage done to his home. The branch manager for Terminix initially agreed to make certain repairs based on the mistaken belief that Baer had purchased a protection guarantee under his Service Plan. After discovering his error, the branch manager told Baer he would honor his agreement to make certain repairs. By letter, the branch manager specified the repairs to be completed by this agreement, disclaimed liability for all other present and future damages, and offered the same to Baer for his acceptance and signature.

8. Baer refused this offer and disclaimer. He eventually claimed that Terminix was liable for more than $75,000 in damages to his home.

9. Pursuant to the terms of the arbitration clause found in the written agreement, Terminix filed a request for arbitration with the American Arbitration Association in November of 1995. Terminix sought as relief a finding that Baer was not entitled to damages and Terminix's liability was limited to re-treatment under the Plan that Baer had purchased.

10. In December of 1995, Baer filed his answering statement and counterclaim in the arbitration proceeding. For his claim and prayer for relief, Baer alleged the following:

> Larry Baer seeks an award that claimant, Terminix International Company, L.P., is liable to him in damages amounting somewhere between $50,000 and $250,000 by virtue of negligence, gross negligence, and breach of contract.

(Dk. 11, Lasater Aff., Ex. 2). Terminix filed an answering statement to the counterclaim denying liability under the Plan for such damages and asserting a limitation of remedies to re-treatment of the property.

11. On May 6, 1996, the assigned arbitrator heard the parties' evidence and arguments. The parties subsequently submitted proposed findings of fact and conclusions of law.

12. In an opinion and award dated June 10, 1996, the arbitrator made the following findings with respect to Baer's counterclaim. Baer did not present sufficient evidence that Terminix's services were so lacking as to violate some statutory requirement or as to commit an independent tort for which liability could exist beyond what the parties had contracted. Baer did not prove a legal justification for relieving him from the liability limitations found in the written agreement. Relying on the doctrine that recognizes the sanctity of contracts which specify the remedies for breach, the arbitrator found that "Terminix has complied with the written doc-

uments in that it has retreated the premises on every occasion a request was made by Baer." (Dk. 111, Lasater Aff., Ex. 9).

13. In the same opinion and award, the arbitrator found that while the Plan relieved Terminix from liability for damages, "equitable principles of the law" obligated Terminix to complete the repairs which it had promised to make. (Dk. 111, Lasater Aff., Ex. 9). The arbitrator awarded $700 to Baer as the difference between the $2,400 estimated cost of the repairs that Terminix had agreed to make and the $1,700 already paid by Terminix for the repair work.

14. Baer subsequently refused Terminix's tendered payment of the amount awarded in the arbitration proceeding.

15. Baer did not file a motion to vacate the arbitration award. On July 17, 1996, Baer filed a petition against Terminix in the District Court of Shawnee County, Kansas. Baer alleges in his petition that Terminix's original and subsequent treatments did not protect his home from termites resulting in damages in excess of $50,000. Baer seeks to recover his damages on claims that Terminix's conduct amounts to a "breach of contract, negligence and gross negligence." (Dk. 2, Plaintiff's Petition). The defendant later removed the plaintiff's suit to federal court.

## ARGUMENTS

Terminix argues that this matter is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16 (1994); that the arbitration award must be confirmed unless vacated, modified, or corrected; and that Baer did not file within the statutory period any pleading which could be construed as a motion to vacate, modify, or correct. Terminix further argues that Baer waived his right to challenge the arbitrability of his negligence claim by asserting this claim in the arbitration proceeding and not otherwise objecting to arbitrator's authority to decide the claim. Alternatively, Terminix contends Baer's only appropriate cause of action lies in contract, not tort. Even if Baer has a valid negligence claim, Terminix insists such a claim would be covered by the terms of their arbitration clause.

Baer admits he agreed to arbitrate his breach of contract and negligence claims against Terminix. Baer, however, asserts that the arbitrator "did not actually adjudicate" his tort claims but only "concluded that ... [the] claims sounded exclusively in contract." (Dk. 13, pp. 1–2). Instead of the FAA, Baer argues that this matter is governed by the Kansas Uniform Arbitration Act ("KUAA"), K.S.A. 5–401, et seq. Baer denies there has been any showing that the transaction contemplated here actually involves interstate commerce. Baer maintains his tort claim is actionable based on an implied duty that Terminix would exercise a reasonable degree of skill and care in the performance of its agreed services. Baer construes the limitation of liability clauses in their written agreement as covering only contractual claims and ineffective against his negligence claims. Finally, Baer insists the FAA provisions on challenges to arbitration awards are irrelevant, as the arbitrator did not decide his tort claims other than to fall "victim to defendant's erroneous arguments that only contract claims, not torts, could lie against it." (Dk. 13, p. 15).

In reply, Terminix expresses surprise over Baer's challenge to the FAA's applicability, particularly in light of the Supreme Court's recent decision in *Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). Terminix submits an affidavit from a regional manager showing that the transaction here involves interstate commerce to an extent that is at least as significant as *Allied–Bruce.* Terminix denies that the plaintiff's tort claims went unadjudicated in the arbitration proceeding. Rather, the arbitrator expressly concluded that Terminix's defense to the tort claims was valid and that Baer could not recover on those claims. Terminix points out that Baer does not contest his failure to comply with FAA procedures for challenging an arbitration award.

■ Baer has filed a supplemental response.[1] Baer characterizes as tangential

---

**1.** Though entitled a "Supplemental Response," Baer discloses in the opening sentence of this

the connections to interstate commerce that Terminix asserts here. Baer says such connections overlook the following facts: (1) that Baer is a "long-time resident of the Topeka area;" (2) that Baer dealt with representatives of Terminix who were local residents; (3) that Baer had no idea he was engaging in interstate commerce by hiring these local agents; and (4) that Terminix hired a local contractor to make the limited repairs to Baer's home. (Dk. 15, p. 2). Baer reiterates his argument that the arbitrator did not adjudicate the merits of his tort claims. Even assuming the FAA applies and bars his negligent application claims, Baer argues for the first time that the FAA does not bar his tort claim based on Terminix's aborted effort to repair his home.

## RELEVANT LAW AND ANALYSIS

### A. Application of the FAA

■ At 9 U.S.C. § 2, the FAA provides that "[a] written provision in ... a contract evidencing a transaction involving commerce[2] to settle by arbitration a controversy thereafter arising out of such contract or transaction, ..., shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of

any contract."[3] In sum, the court makes a twofold inquiry.[4] Is the arbitration provision in writing? If so, then is it part of a transaction involving interstate commerce? The first inquiry poses no issue here. It is uncontroverted that the parties' agreement contained a written arbitration provision. Baer attempts to make an issue out of the second inquiry.

In *Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995), the Supreme Court construed "involving" in § 2 as "broad" and "the functional equivalent of 'affecting'" which "signals a congressional intent to exercise its Commerce Clause powers to the full." 513 U.S. at 273, 115 S.Ct. at 839, 130 L.Ed.2d at 764.[5] As for the § 2 language of "a contract evidencing a transaction involving commerce," the Supreme Court construed it to mean "only that the transaction (that the contract 'evidences') must turn out, in fact, to have involved interstate commerce." *Id.* at 277, 115 S.Ct. at 841, 130 L.Ed.2d at 766. The Supreme Court expressly rejected the interpretative choice of what was in the contemplation of the parties. *Id.* at 278–81, 115 S.Ct. at 841–43, 130 L.Ed.2d at 767–68.[6] It

---

filing that he is responding to the arguments and issues found in Terminix's reply brief. Thus, what Baer filed does not supplement his original response with new authorities or clarifications; rather, it is a surreply. The plaintiff filed the surreply without seeking leave of the court. The rules of this court do not provide for the filing of surreplies. D.Kan. Rule 7.1. The courts in this district do not permit a surreply without leave of the court. *Harnett v. Parris,* 925 F.Supp. 1496, 1500 (D.Kan.1996); *see, e.g., Edwards v. Esau Investments, Inc.,* No. 93–4130–DES, 1994 WL 606073, at *5 (D.Kan. Oct.31, 1994); *Dees v. Vendel,* No. 91–2482–EEO, 1994 WL 17951, at *1 (D.Kan. Jan.13, 1994), and reserve leave for rare circumstances as "where a movant improperly raises new arguments in a reply," *E.E.O.C. v. International Paper Co.,* No. 91–2017–L, 1992 WL 370850 (D.Kan. Oct.28, 1992). It is the court's practice to ignore surreplies filed without leave. *See, e.g., Brown v. Security Benefit Group,* No. 95–4127–SAC, 1997 WL 263737, at *4 (D.Kan. Apr.24, 1997). Nevertheless, the court will indulge the plaintiff and consider his filing.

2. The FAA defines "commerce" as "commerce among the several states." 9 U.S.C. § 1.

3. "Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agree-

ments, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Co.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

4. The party seeking to apply the FAA has the burden of proving these two elements. *See Harrison v. Nissan Motor Corp. in U.S.A.,* 111 F.3d 343, 348 n. 8 (3rd Cir. 1997).

5. The Supreme Court in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 401 n. 7, 87 S.Ct. 1801, 1805 n. 7, 18 L.Ed.2d 1270 (1967), discussed the FAA's requirement of "involving commerce" and observed that legislative intent was indicated by the following proclamation in a House Report " '[t]he control over interstate commerce [one of the bases for the legislation] reaches not only the actual physical shipment of interstate goods but also contracts relating to interstate commerce.'" (quoting H.R.Rep. No. 96, 68th Cong. 1st Sess. 1 (1924)); *see also Zink v. Merrill Lynch Pierce Fenner, Smith, Inc.,* 13 F.3d 330, 333 (10th Cir.1993).

6. It troubles the court that in light of this definitive ruling by the Supreme Court in 1995 the plaintiff still sees fit to argue that he "had no

is enough "that the 'transaction' in fact 'involve' interstate commerce, even if the parties did not contemplate an interstate commerce connection." *Id.* at 281, 115 S.Ct. at 843, 130 L.Ed.2d at 769.

■ The Supreme Court in *Allied–Bruce* observed there:

> The parties do not contest that the transaction in this case, in fact, involved interstate commerce. In addition to the multistate nature of Terminix and Allied–Bruce, the termite-treating and house-repairing material used by Allied–Bruce in its (allegedly inadequate) efforts to carry out the terms of the Plan, came from outside Alabama.

513 U.S. at 282, 115 S.Ct. at 843, 130 L.Ed.2d at 769. The facts in *Allied–Bruce* are substantially similar to the instant case, and Baer does not attempt to distinguish them. The multistate character of Terminix is evident by reason of its headquarters in Tennessee and its operations in forty-eight states. The chemicals used to treat Baer's home were manufactured in Missouri and transported to Tennessee, where they were stored before being shipped to Kansas. The Service Plan shows that Baer's contract was with Terminix International Company and that the Plan had been executed by the President of Terminix at Memphis, Tennessee.

■ Baer ignores the facts in *Allied–Bruce* and denies the transaction involves interstate commerce. Citing no case law, Baer rests his position entirely on the facts

that he resides in Topeka, that his home is in Topeka, that the services were to be provided in Topeka, that he dealt with Terminix representatives who were local residents, and that the contractor hired for the repairs was a local resident. Baer's reliance on these facts is misplaced, for they do not remove this transaction from the realm of interstate commerce. *See Hoffman v. Cargill, Inc.*, 968 F.Supp. 465, 471 (N.D.Iowa 1997). Interstate commerce is involved so long as some part of the transaction has a nexus to it. Rather than limiting consideration to the plaintiff's duties and expectations under the contract, the courts have generally "focused on the nature of the defendant's business." *Nicholson v. Labor Ready, Inc.*, No. 97–0518–FMS, 1997 WL 294393, at *3 (N.D.Cal. May 28, 1997). The interstate character of Terminix here is enough to satisfy the interstate commerce element of the FAA. *See Allied–Bruce*, 513 U.S. at 281–82, 115 S.Ct. at 843–44, 130 L.Ed.2d at 769; *Terminix Intern. Co. Ltd. v. Jackson*, 669 So.2d 893, 895–96 (Ala.1995). Baer's arguments to the contrary are rejected.[7]

### B. Arbitrability [8] of Tort Claims

■ In his original response, Baer acknowledges that "[t]he arbitrability of plaintiff's tort claims hinges upon this determination" whether the FAA applies here. (Dk. 13, p. 4). In his supplemental response, Baer retreats from this position, now arguing that "[t]he applicability of the FAA is not dispositive, because all of plaintiff's tort claims nevertheless are properly justiciable in this

idea he was supposedly engaging in interstate commerce by hiring such local persons to treat his home." (Dk. 15, Plaintiff's Supplemental Response, p. 2). In this situation, the court normally would consider sanctions under Fed.R.Civ.P. 11. The court will treat this situation as a careless oversight and excuse the plaintiff, only because he correctly recognized in his earlier response that the Supreme Court in *Allied–Bruce* had rejected the "contemplation of the parties" test. (Dk.13, p. 4).

7. In his supplemental response, Baer argues for the first time that the FAA does not apply to his tort claim based on Terminix's aborted effort to repair his home. He argues that these claims lack a nexus to interstate commerce and do not arise from the contract between the parties. The

interstate character of Terminix's business is the constant factor which establishes the interstate commerce element. The written arbitration clause applies to "any controversy or claim between them arising out of or relating to this agreement." The plaintiff's negligent repair claim is plainly related to this agreement and the duties thereunder. As discussed later, Baer has waived any objection to the arbitrator's authority to arbitrate his negligence claims.

8. "Arbitrability of contracts evidencing interstate commerce is governed by federal substantive law rather than state law." *Lee v. Chica*, 983 F.2d 883, 886 (8th Cir.) (citations omitted), *cert. denied*, 510 U.S. 906, 114 S.Ct. 287, 126 L.Ed.2d 237 (1993); *see O'Connor v. R.F. Lafferty, & Co., Inc.*, 965 F.2d 893, 901 (10th Cir. 1992).

Court, for the simple reason that those claims were not in fact arbitrated." (Dk. 15, p. 3). While it believes Baer was right the first time, the court will consider all of Baer's arguments.

### 1. *Confirmation of Arbitration Award*

 "A court may only vacate an arbitration award for reasons enumerated in ... 9 U.S.C. § 10, or for a handful of judicially created reasons." *Denver & Rio Grande Western Railroad Co. v. Union Pacific Railroad Co.*, 119 F.3d 847, 849 (10th Cir.1997) (citations omitted). "Outside of these limited circumstances, an arbitration award must be confirmed." *Id.* (citing 9 U.S.C. § 9). A party that does not move to vacate an arbitration award loses the right to oppose confirmation of the same award sought by the other party. *Lander Co., Inc. v. MMP Investments, Inc.*, 107 F.3d 476, 478 (7th Cir. 1997), *petition for cert filed*, 65 U.S.L.W. 3799 (U.S. May 19, 1997) (No. 96–2684). Baer essentially concedes he never filed a motion to vacate or otherwise challenged the arbitration award. (Dk.13, pp. 14–15). The court has no choice but to confirm the arbitration award as requested by Terminix.

### 2. *Waiver*

 Terminix cites the well-established rule that a party does not preserve its objection to the arbitrability of an issue unless an objection is timely made in the arbitration proceeding. *See, e.g., Conntech Development Co. v. University of Conn.*, 102 F.3d 677, 685 (2nd Cir.1996). Stated another way, a party that agrees to submit the question of arbitrability to the arbitrator waives any right to object later to that arbitrator's authority. *Nghiem v. NEC Electronic, Inc.*, 25 F.3d 1437, 1440 (9th Cir.) *cert. denied*, 513 U.S. 1044, 115 S.Ct. 638, 130 L.Ed.2d 544 (1994). The evidence must be clear concerning the agreement to arbitrate, and the evidence may include the parties' conduct during arbitration. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944–47, 115 S.Ct. 1920, 1924–26, 131 L.Ed.2d 985, 994–95 (1995); *Van Waters & Rogers Inc. v. International Broth. Teamsters, Local Union 70*, 913 F.2d 736, 740 (9th Cir.1990). If a party submits and argues the issue on the merits without either objecting to the arbitrator's authority or expressly reserving the jurisdiction objection, the party waives its right to seek judicial review of this jurisdiction objection. *Van Waters & Rogers*, 913 F.2d at 740; *cf. First Options*, 514 U.S. at 944–47, 115 S.Ct. at 1924–26, 131 L.Ed.2d at 994–95. For that matter, " 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.' " *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353–54, 87 L.Ed.2d 444 (1985) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983))

 Baer does not contest these principles. Nor does he deny that he voluntarily submitted his tort claims to the arbitrator for a decision on the merits. Moreover, Baer does not dispute that during the arbitration proceeding he never challenged the arbitrator's authority to decide his tort claims. By alleging and arguing, without objection or reservation, his tort claims in the arbitration proceeding, Baer agreed to have the arbitrator decide those claims and waived any right now to object to the arbitrator's jurisdiction over them.

### 3. *Arbitrator's Decision on Tort Claims*

 Baer opposes summary judgment on his tort claims arguing they were never adjudicated by the arbitrator. . Rather than decide whether Terminix's conduct was tortious, the arbitrator "fell victim to defendant's erroneous arguments that only contract claims, not torts, could lie against it [Terminix]." (Dk.13, p. 15). In short, Baer insists that the arbitration award does "not purport to adjudicate the tort claims plaintiff asserts here." (Dk.13, p. 14).

Baer's argument is without substance. Baer cites no authority for his narrow and unique definition of "adjudicate." The court is satisfied that the arbitrator decided the plaintiff's tort claims. In his opinion and award, the arbitrator identified the issues as

including whether Terminix was negligent and whether Terminix could limit its liability for negligence in the contract. In relevant part, the arbitrator ruled:

> The evidence presented in this case is insufficient to make a determination that all of the existing termite damage occurred after May 6, 1992. Consequently, the claim of Baer that the lack of proper treatment on May 6, 1992, is the proximate cause of the present condition cannot be substantiated. Additionally, there was insufficient evidence to establish an independent tort on the part of Terminix that would create liability beyond the liability contracted for by the parties. Terminix is correct in its analysis of *Afkins [Afkinson] v. Orkin Extermination [Exterminating], Co.*, 5 Kan.App.2d 739, 625 P.2d 505 cited by Baer as authority for his position. There is no claim nor are there facts to suggest in this case that failure to comply with some statutory requirement was a proximate cause of the damages sustained by Baer. On the contrary, the claims relating to quantity of product and/or methodology refer to contractual duties required of Terminix under the written documents....

> . . . .

> The cases cited by Baer as authority that one cannot contract to exempt itself from liability for the consequences of its own negligence as being void against public policy involve indemnification cases and are not applicable in the instant matter.... For these reasons and based on the facts as set forth above, an Award is entered on behalf of Terminix on the counter claim made by Baer for damages resulting from the termite infestation.

(Dk. 11, Lasater Aff., Ex. 9). By finding for the above reasons that Baer could not recover tort damages, the arbitrator necessarily decided Baer's tort claims. The court finds no factual or legal basis for the argument that Baer's tort claims were never adjudicated in arbitration.

IT IS THEREFORE ORDERED that the defendant Terminix's motion for summary judgment (Dk. 10) is granted on the plaintiff Baer's claims. The clerk is directed to enter judgment and costs for the defendant and against the plaintiff on the plaintiff's claims.

IT IS FURTHER ORDERED that the defendant Terminix's motion for summary judgment (Dk.10) is granted on the defendant Terminix's counterclaim seeking confirmation of the arbitration award. The clerk is directed to enter judgment on the counterclaim confirming the arbitration award in this matter dated June 10, 1996, and allow costs to the defendant as the prevailing party under Fed.R.Civ.P. 54(d)(1).