(15 P.3d 846)
No. 84,075

BIOMAT, INC., *Appellant,* v. BLAINE E. SAMPSON and
MARGARET M. SAMPSON, *Appellees.*

Opinion filed December 8, 2000.

*Barry L. Pickens, Mark A. Thornhill,* and *Patrick J. Whalen,* of Spencer Fane Britt & Browne, LLP, of Kansas City, Missouri, for appellant.

*John J. Miller,* of Law Offices of John J. Miller, P.A., of Overland Park, and *William J. Skepnek,* of Skepnek Law Firm, P.A., of Lawrence, for appellees.

Before PIERRON, P.J., BEIER, J., and C. FRED LORENTZ, District Judge assigned.

BEIER, J.: Defendant-appellant Biomat, Inc. (Biomat), seeks review of the district court's partial denial of its motion to compel arbitration in this dispute over its Stock Redemption Agreement (Agreement) with plaintiffs-appellees Blaine and Margaret Sampson. We reverse, because we conclude that the Federal Arbitration

Act, 9 U.S.C. § 1 *et seq.* (1994), applies to the Sampsons' claim that Biomat fraudulently induced them to enter into the Agreement.

Blaine Sampson worked for Biomat as its chief financial officer, and the Sampsons purchased 350,000 shares of Biomat stock. Biomat also issued stock to citizens of other states. The record demonstrates that Biomat sold its products—biodegradable seed mats for grass, flowers, and herbs—throughout the nation.

After Blaine Sampson resigned from his Biomat position, the Sampsons entered into a contract with Biomat in which Biomat agreed to repurchase the Sampsons' stock. After several months, Biomat informed the Sampsons that it would be unable to perform by the redemption deadline. Several months after the deadline had passed, the parties entered into a second contract, the Agreement at issue in this case. In the Agreement, Biomat again promised to redeem all of the Sampsons' stock.

The Agreement provided in pertinent part:

"Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules. . . . Any such controversy or claim shall be submitted to and resolved by one arbitrator selected by the American Arbitration Association, and the venue for such arbitration shall be Prairie Village, Kansas."

Because Biomat again failed to redeem any of the Sampsons' stock, the Sampsons filed this action. They sought damages for breach of the Agreement in Count III and asserted fraud in the inducement of the Agreement in Count IX. In support of federal securities claims not at issue on this appeal, the Sampsons also contended that shares of Biomat's stock were offered and sold "by the use of instrumentalities of interstate commerce or of the mails." The Sampsons' pleadings further reflected that they were residents of Kansas and that Biomat was a Delaware corporation with its principal place of business in Kansas.

Based on the arbitration clause, Biomat moved to compel arbitration of the Sampsons' claims arising from or relating to the Agreement, or, in the alternative, to dismiss Counts III and IX.

After hearings, the district court dismissed Count III alleging breach of contract, but it denied Biomat's alternative motions with

respect to Count IX, the fraud-in-the-inducement claim. The court stated:

"[T]he Court finds no statute that compels plaintiffs' arbitration of Count IX of the amended petition. The arbitration clause . . . is thus ineffective to compel plaintiffs to arbitrate Count IX. The Court concludes that the subject of the Stock Redemption Agreement—the redemption of stock issued only to Blaine and Margaret Sampson—is purely a local issue. As such, the agreement does not 'involve commerce' and falls outside of the U.S. Congress' commerce clause power. As a result, the Federal Arbitration Act cannot compel the plaintiffs' arbitration of Count IX.

"Neither does the Kansas act compel arbitration of Count IX. . . . the Court finds that Count IX states a claim sounding in tort. The Kansas Uniform Arbitration Act expressly exempts tort claims from its scope.

"Because no statute compels arbitration of Count IX, plaintiffs may revoke the arbitration clause with respect to that count at their sole election. Plaintiffs have elected to revoke that clause by their filing of Count IX. This Court thus reserves subject matter jurisdiction . . . with respect to Count IX."

The first issue we must resolve on this appeal is whether the Federal Arbitration Act (Act) preempts application of state law.

"The Federal Arbitration Act . . . preempts conflicting state laws which exempt enforcement of arbitration agreements involving interstate commerce." *Skewes v. Shearson Lehman Bros.*, 250 Kan. 574, Syl. ¶ 1, 829 P.2d 874 (1992). It applies in state courts as well as federal, and "requires state courts to enforce an applicable arbitration clause despite contrary state law or policy." *R.J. Palmer Constr. Co. v. Wichita Band Instrument Co.*, 7 Kan. App. 2d 363, 365, 642 P.2d 127 (1982) (citing *Allison v. Medicab Int'l.*, 92 Wash. 2d 199, 597 P.2d 380 [1979]). " 'In creating a substantive rule applicable in state as well as federal courts, Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements.' " *Skewes*, 250 Kan. at 579 (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 16, 79 L. Ed. 2d 1, 104 S. Ct. 852 [1984]).

Section 2 of the Act provides:

"A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and

enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1994).

The district court found the subject matter of the Agreement was "purely a local issue" rather than evidence of a transaction involving commerce. Biomat argues the district court erred in reaching this conclusion.

The issue of whether the transaction evidenced by the Agreement involved commerce under the Act is a question governed by federal substantive law. *R.J. Palmer Constr. Co.*, 7 Kan. App. 2d at 365. Our review of a district court's conclusions of law is unlimited. *Lindsey v. Miami County National Bank*, 267 Kan. 685, 689-90, 984 P.2d 719 (1999).

The Sampsons argue the proper test for determining whether a contract evidences a transaction involving commerce is whether the parties "*contemplated* substantial interstate activity" under *Metro Industrial Painting Corp. v. Terminal Const. Co.*, 287 F.2d 382, 387 (2d Cir.), *cert. denied* 368 U.S. 817 (1961), a case favorably cited by this court in *R.J. Palmer Constr. Co.*, 7 Kan. App. 2d at 367. The Sampsons are a bit behind the times.

The United States Supreme Court specifically considered and rejected the "contemplation of the parties" test in *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277-78, 130 L. Ed. 2d 753, 115 S. Ct. 834 (1995). The proper test is instead whether the transaction *in fact* involved interstate commerce. (Emphasis added.) 513 U.S. at 281; see also *Baer v. Terminix Intern. Co., LTD. Partnership*, 975 F. Supp. 1272, 1277-78 (D. Kan. 1997) (plaintiff's assertion that he had no idea transaction involved commerce unsupported and possibly sanctionable in light of *Allied-Bruce* ruling). This broad interpretation " 'embodies Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause.' " *Allied-Bruce*, 513 U.S. at 274 (quoting *Perry v. Thomas*, 482 U.S. 483, 490, 96 L. Ed. 2d 426, 107 S. Ct. 2520 [1987]). "[T]he Act's 'control over interstate commerce reaches not only the actual physical interstate shipment of goods but also contracts relating to interstate commerce.' " 513 U.S. at 274 (quoting H.R. Rep. No. 96, 68th Cong., 1st Sess., 1 [1924]).

Biomat first argues that the subject of the agreement directly affected interstate commerce because it was made between a corporation incorporated in Delaware and citizens of Kansas. In *Sigco Sunplant, Inc. v. Harrison,* No. 89-2229-0, 1989 WL 134462 (D. Kan. Oct. 18, 1989), a North Dakota corporation brought suit against a Kansas resident, alleging breach of contract, and the defendant filed a motion to dismiss. Judge Earl E. O'Connor indicated in a footnote that the parties' diversity of citizenship was among the factors weighing in favor of application of the Act. *Sigco Sunplant* does not, however, stand for the proposition that diversity *alone* is enough to bring the Act into play, and we are not willing to do so either.

The question thus becomes whether relevant factors in addition to the parties' diversity of citizenship are present here. Our review of the record in light of the analogous precedents persuades us they are.

In *Prima Paint v. Flood & Conklin,* 388 U.S. 395, 18 L. Ed. 2d 1270, 87 S. Ct. 1801 (1967), Prima Paint, a Maryland corporation, acquired a New Jersey paint business with clients in several states and secured F&C's assistance as consultants in arranging the transfer of manufacturing and selling operations from New Jersey to Maryland. The Court found that, because the consulting agreement between Prima Paint and F&C was inextricably tied to the interstate transfer and operations of the paint business, the consulting agreement was a contract evidencing a transaction in interstate commerce under the Act. 388 U.S. at 401.

In *Allied-Bruce,* an Alabama homeowner hired a local franchise of Terminix International Company, Allied-Bruce, to inspect his home for termites before selling it, and Terminix incorrectly reported that there was no termite problem. The new homeowners immediately brought suit against the homeowner, Allied-Bruce, and Terminix; Terminix argued the claims should be arbitrated pursuant to a clause in the written contract. The Supreme Court of Alabama found the arbitration clause was inapplicable under state law. On appeal, the United States Supreme Court found the transaction involved interstate commerce because of the multistate

nature of Terminix coupled with Allied-Bruce's procurement of treatment materials outside Alabama. 513 U.S. at 282.

Similarly, in *Baer*, 975 F. Supp. 1272, a Kansas homeowner hired a local branch of Terminix International Company to treat his home for termites, and Baer later claimed that Terminix was responsible for termite damage to his home after several re-treatments. Despite engaging in arbitration pursuant to the written agreement, Baer filed a petition in state court, seeking damages for breach of contract, negligence, and gross negligence. The case was removed to federal court.

On appeal, Baer argued that the Act did not apply to his case because there had been no showing that the transaction involved interstate commerce. Baer dealt with a local contractor to make limited repairs; the representatives of Terminix were local residents; and he said he had no idea he was engaging in interstate commerce by hiring the local personnel.

The court emphatically rejected Baer's arguments:

"Baer's reliance on these facts is misplaced, for they do not remove this transaction from the realm of interstate commerce. [Citation omitted.] Interstate commerce is involved so long as some part of the transaction has a nexus to it. Rather than limiting consideration to the plaintiff's duties and expectations under the contract, the courts have generally 'focused on the nature of the defendant's business.' *Nicholson v. Labor Ready, Inc.*, No. 97-0518-FMS, 1997 WL 294393, at °3 (N.D. Cal. May 28, 1997). The interstate character of Terminix here is enough to satisfy the interstate commerce element of the [Act]. [Citations omitted.]" 975 F. Supp. at 1278.

Because Terminix operated in 48 states and used chemicals manufactured and stored in other states, its dispute with Baer was covered by the Act. 975 F. Supp. at 1278.

In this case, the Sampsons themselves alleged that the "shares of the Corporations' stock were offered and sold to Plaintiffs by the use of means or instrumentalities of interstate commerce." Biomat issued shares of its stock to citizens of various states, and Biomat sells its product throughout the country. Indeed, Biomat would have had to use revenues from its nationwide sales to redeem the Sampsons' stock. Thus, the plan to redeem the stock as

memorialized in the Agreement actually involved commerce, and the parties' resulting dispute must be arbitrated under the Act.

With regard to the district court's conclusion that Count IX alleging fraud in the inducement of the Agreement sounded in tort rather than contract, we are doubtful. The Sampsons' desire to avoid compulsory arbitration under the Agreement is plain, see *Beeson v. Erickson*, 22 Kan. App. 2d 452, 455-56, 917 P.2d 901, *rev. denied* 260 Kan. 991 (1996) (one cannot change nature of action merely by naming it something that sounds like a tort; effort to avoid mandatory arbitration thwarted); and they seek basically the same remedies under both Count III and Count IX, see *Heller v. Martin*, 14 Kan. App. 2d 48, 782 P.2d 1241 (1989) (breach of contract action cannot be turned into action for fraud merely by alleging reliance on representation that contract would be performed; independent fraud must cause damages beyond those caused by breach). But we need not resolve this question because, even if the fraud-in-the-inducement claim alleges tortious conduct, the federal Act, unlike its Kansas counterpart, the Kansas Uniform Arbitration Act, K.S.A. 5-401 *et seq.*, contains no exceptions for tort claims.

Reversed and remanded with directions to dismiss Count IX in favor of its arbitration under the Federal Arbitration Act.